**REED v. LEHMAN, Governor of New York, et al.**

No. 474.

Circuit Court of Appeals, Second Circuit.

· Aug. 24, 1937.

John J. Bennett, Jr., Atty. Gen., for appellant Warner.

Philip Huntington, of Glen Cove, N. Y., for appellant Littleton.

James L. Dowsey, of Mineola, L. I., N. Y., for appellants Skidmore and Hendrickson.

George L. Hubbell, Jr., of New York City, for appellant Vandewater.

Henry Epstein, Sol. Gen., of Albany, N. Y., John F. X. McGohey, Colin McLennan, and John C. Crary, Jr., Asst. Attys. Gen., and Robert W. Duvall, Asst. Co. Atty., of Mineola, L.· I., N. Y., for defendants.

Edwards, Levy, Fishel & George, of Mineola, L. I., N. Y. (George M. Levy, of Mineola, L. I., N. Y., of counsel), for appellee.

Before MANTON, CHASE, and MACK, Circuit Judges.

MANTON, Circuit Judge.

This appeal is from a preliminary injunction order restraining appellants from enforcing, as against appellee, provisions of section 986 of the Penal Law of New York and from interfering with and disturbing the appellee and his employees and patrons in the operation of his business, that of carrying on dog racing meets and from seizing or taking into their possession or custody any of the records or paraphernalia used by the appellee in the operation of his business or otherwise interfering with the patronage of his business.

The amended bill, in addition to alleging diversity of citizenship and that more than $3,000 is involved, alleges that section 1, c. 233, of the Laws of 1934 (New York) amended chapter 440 of the Laws of 1926 by adding a new section (section 17); that this amended section 986 of the Penal Law of New York; that chapter 233 of the Laws of 1934 is in contravention of the Fourteenth Amendment to the Constitution of the United States because the statute "abridges the privileges and immunities of appellee and deprives him of his liberty and property without due process of law and denies the appellant the equal protection of the laws by subjecting him to criminal prosecution for the alleged acceptance of bets, wagers on dog races, while at the same time exempting persons who accept bets and wagers on horse racing from similar prosecution."

The convening of a court pursuant to section 380 of the United States Code (28 U.S.C.A. § 380) was applied for and granted. The court so convened held there was no constitutional question presented for decision and referred the case to the District Judge, who convened the court to pass upon whatever other equitable relief was prayed for. The District Judge, after a further hearing, granted the injunction order.

Appellants also appeal from an order which denied their motion to dismiss the bill. This order is not appealable and that appeal therefore must be and is dismissed. Miller et al. v. Pyrites Co. (C.C.A.) 71 F.(2d) 804; Central Vermont Transp. Co. v. Durning (C.C.A.) 71 F.(2d) 273; Judicial Code § 129, as amended (28 U.S.C.A. § 227).

The injunction was granted upon the theory that irreparable damages are suffered by the appellee warranting equitable relief. Dog racing meets may be lawfully conducted but arrests were made and are threatened based upon the officials' contention that betting and book-making—gambling—is carried on at the appellee's track under the plan of buying or selling options on dogs raced at the meets. The method of buying and selling options is as follows. Appellee, by lease option agreements, contracts for the exhibition of racing greyhounds with the owners thereof upon a per diem basis. As a condition, the owners agree to execute bills of sales or such greyhounds at prices to be set by the appellee and contain an option agreement obtained prior to each individual performance. These greyhounds are matched according to their experience, speed and ability in ten races nightly, eight greyhounds being entered in each race. The race meets are open to the general public who pay admission. The appellee, having an assignable right to purchase the greyhounds participating therein, offers them for sale to the public on (a) a "first option" which entitles the owner thereof to purchase the greyhound upon his option within 10 minutes after the running of the race at the claiming price previously set thereon; (b) a "second option" offering a similar right to purchase subject to the exercise of the first option and to be exercised during a period of 5 minutes after the expiration of the first option and at a reduction in the claiming price of $25; (c) a "third option" which is subject to the first and second option and which must be exercised during a period of 5 minutes afer the expiration of the second option and at a further reduction in price of $25. These options are sold without limit to the patrons of the track. If more than one optionee desires to exercise his option upon the same dog, unless the others surrender their rights thereto, lots are drawn before the racing secretary for the right to exercise the option, the winner thus obtaining the first right.

The eight greyhounds entered in the race are placed in an automatic starting box and a mechanical rabbit is released and circles the race course, followed by the greyhounds which are released after the rabbit has been started. Thus the greyhounds exhibit their racing ability, stamina, and form, and the order of the finish thereof is noted and displayed upon a board placed in front of the grandstand and in view of the public.

We need not say whether or not this is gambling, but we leave that question to the criminal court, where the appellee is to be tried on the indictment found against him under section 986 of the New York Penal Law. We are not called upon to decide that question because the injunction granted must be set aside for other reasons.

■ Although a civil suit in form, this suit seeks a construction of the amendments of the criminal laws of New York (section 986, as amended by chapter 233 of the Laws of 1934, § 1, adding section 17 to Laws 1926, c. 440). A federal court should not attempt to enforce or pass unnecessarily upon the penal laws of a state. The Antelope, 11 Wheat. 66, 68, 6 L.Ed. 268; Tillitson v. Milmore (D.C.) 30 F.(2d) 559. Courts of equity are ordinarily without jurisdiction to restrain a prosecution for crime but a distinction is made where it is necessary to protect property rights. Philadelphia Co. v. Stimson, 223 U.S. 605, 32 S.Ct. 340, 56 L.Ed. 570; Ashcraft v. Healey (C.C.A.) 23 F.(2d) 189. The jurisdiction of a court of equity, in the absence of an express statute, is limited to the protection of rights of property. The prosecution and punishment of a state criminal statute is appropriate for the courts and officers of the state and can be interfered with by the District Courts of the United States so far only as Congress, in order to maintain the supremacy of the Constitution and the Laws of the United States, has expressly authorized through the removal of the prosecution into the courts of the United States for trial or to discharge a prisoner by writ of habeas corpus issued by that court or a judge thereof. Commonwealth of Virginia v. Paul, 148 U.S. 107, 13 S.Ct. 536, 37 L.Ed. 386.

■ To form a basis for equitable relief because of damage to property, it must appear that irreparable loss suffered is great and immediate. Spielman Motor Sales Co. v. Dodge, 295 U.S. 89, 55 S.Ct. 678, 79 L.Ed. 1322; Dupont De Nemours & Co. v. Boland (C.C.A.) 85 F.(2d) 12; Bradford v. Hurt et al. (C.C.A.) 84 F.(2d) 722, 723. To justify equitable interference, there must be exceptional circumstances and a clear showing that an injunction is necessary in order to afford adequate protection of constitutional rights. Terrace v. Thompson, 263 U.S. 197, 44 S.Ct. 15, 68 L.Ed. 255; Packard v. Banton, 264 U.S. 140, 44 S.Ct. 257, 68 L.Ed. 596. Otherwise the accused should first set up his defense in the state court even though the validity of the statute is challenged.

■ The amended bill in the instant case fails to meet the test. General allegations of irreparable damage and deprivation of rights are alleged. In substance, it is pleaded that appellee invested large sums of money in this business at the Fair Grounds of the Queens-Nassau Agricultural Society whereby he was bound to pay substantial rental for the year 1937; that he had made extensive and expensive alterations and improvements to the building and structure and that he had entered into contracts with employers, greyhound owners, trainers and concessionaires for the year 1937, "all of which involved substantial sums of money"; also that the threatened acts of the defendants in the enforcement of the criminal law of the state has resulted in his having closed down his business and prevented him from carrying on, and has .resulted and will continue to result in the unlawful interference with and impairment of, the contracts and obligations between him and others as above referred to. There is a general allegation that by reason of the threats his patrons have been afraid to patronize his business and he is suffering loss by reason of loss of trade. Aside from these general allegations and unsupported conclusions, the case is one for ordinary criminal prosecution where appropriate opportunity for the assertion of appellee's rights may be presented. Bradford v. Hurt et al., supra. The validity and effect of the several sections of the New York Penal Law referred to may all be determined in the pending criminal proceeding and we do not pass upon the questions thus presented. The bill and affidavits are insufficient in pleading irreparable damage so as to have warranted a federal court of equity granting this injunction.

The injunction was improvidently granted and is reversed.