## CHICAGO, ROCK ISLAND & PACIFIC RAIL-ROAD CO. *v.* STUDE ET AL.

No. 209.   Argued December 2–3, 1953.—Decided January 18, 1954.

*Alden B. Howland* and *B. A. Webster, Jr.* argued the cause for petitioner. *Mr. Howland* also filed a brief for petitioner.

*Raymond A. Smith* and *Harold W. Kauffman* argued the cause for respondents. With them on the brief were *Daniel J. Gross, Philip J. Willson* and *John M. Peters.*

MR. JUSTICE MINTON delivered the opinion of the Court.

The petitioner, a Delaware corporation, owns and operates its railroad through Pottawattamie County, Iowa. It was authorized by the Interstate Commerce Commission to improve its line of railway in that county and by the Iowa State Commerce Commission to acquire by condemnation any land necessary for the improvement. On January 18, 1952, pursuant to the Iowa Code,[1] the petitioner filed with the sheriff of the county its application to condemn certain lands in the county owned by respondent Stude. The sheriff appointed a commission

---

[1] "471.6 Railways. Any railway, incorporated under the laws of the United States or of any state thereof, may acquire by condemnation or otherwise so much real estate as may be necessary for the location, construction, and convenient use of its railway. . . .

    .        .        .        .        .

"472.3 Application for condemnation. Such proceedings shall be instituted by a written application filed with the sheriff of the county in which the land sought to be condemned is located. . . .

    .        .        .        .        .

"472.4 Commission to assess damages. The sheriff shall thereupon, except as otherwise provided, appoint six resident freeholders of his

of six resident freeholders to assess damages. Notice was given by the sheriff to the respondent owner and others interested in the land, and an award of damages in the sum of $23,888.60 was allowed to the owner and $1,000 to the tenant. The amount of the assessment was paid by the petitioner to the sheriff and the petitioner took possession of the land.[2] Such appraisal became final unless appealed from.

On March 6, 1952, the petitioner filed with the sheriff of the county a notice of appeal from the commission's award. The Iowa Code provides for appeal as follows:

> "472.18 Appeal. Any party interested may, within thirty days after the assessment is made, appeal therefrom to the district court, by giving the adverse party, his agent or attorney, and the sheriff, written notice that such appeal has been taken.

> .       .       .       .       .

> "472.21 Appeals—how docketed and tried. The appeal shall be docketed in the name of the owner of the land, or of the party otherwise interested and appealing, as plaintiff, and in the name of the applicant for condemnation as defendant, and be tried as in an action by ordinary proceedings." Code of Iowa, 1950.

---

county, none of whom shall be interested in the same or a like question, who shall constitute a commission to assess the damages to all real estate desired by the applicant and located in the county." Code of Iowa, 1950.

[2] "472.25 Right to take possession of lands. Upon the filing of the commissioners' report with the sheriff, the applicant may deposit with the sheriff the amount assessed in favor of a claimant, and thereupon the applicant shall, except as otherwise provided, have the right to take possession of the land condemned and proceed with the improvement. No appeal from said assessment shall affect such right, except as otherwise provided." Code of Iowa, 1950.

The petitioner then filed a complaint in the United States District Court for the Southern District of Iowa against the respondents in which it alleged diversity of citizenship, jurisdictional amount, authority to make improvements and to condemn therefor, together with a description of the land and that respondent Stude was the owner, and that the assessment proceedings had been instituted in the sheriff's office, resulting in the assessment of damages of $23,888.60, which was alleged to be excessive, and that appeal was taken by notice duly given. This notice was referred to as Exhibit A to the complaint, which exhibit recited that the appeal was taken to the Federal District Court for the Southern District of Iowa, and a transcript of the sheriff's proceeding was filed in that court. The prayer was that the damages for the taking of the land be fixed at not more than $10,000. On this complaint, a summons was issued and served upon the respondents.

The petitioner also filed an appeal from this assessment in the state court, the District Court for Pottawattamie County. The case was docketed there with the landowner as the plaintiff and the petitioner-condemnor as defendant, as required by the Iowa Code. Thereafter, a petition to remove the cause to the federal court was filed by the petitioner. The respondents filed in the Federal District Court a motion to dismiss the complaint filed therein and a motion to remand the case removed from the state court.

The federal court granted the motion to dismiss and dismissed the complaint but denied the motion to remand. The petitioner appealed from the judgment dismissing its complaint. The respondents gave notice of appeal from the order of the District Court denying the motion to remand. The Court of Appeals affirmed the District Court's judgment dismissing the complaint and

reversed the District Court's denial of the motion to remand, and ordered the cause remanded to the state court. 204 F. 2d 116, 204 F. 2d 954. We granted certiorari, 346 U. S. 810.

*The Order Denying the Motion to Remand.* Obviously, such an order is not final and appealable if standing alone. *Reed* v. *Lehman,* 91 F. 2d 919; *Miller* v. *Pyrites Co.,* 71 F. 2d 804. While these two cases were separate actions pending on the docket of the Federal District Court, they both involve the same subject and they were treated by the parties, the District Court and the Court of Appeals as if the dismissal appealed from and the order in the removal case were made in one case. Treating them as one case, the cross-error, challenging the order denying the motion to remand, may be considered as assigned in a case involving an appealable order, the order dismissing the complaint and the action. This is true despite the fact that the order denying the motion to remand standing alone would not be appealable. *Deckert* v. *Independence Shares Corp.,* 311 U. S. 282, 287.

We come therefore to the merits of the motion to remand. The question on this motion is whether the petitioner was a defendant nonresident of Iowa and therefore authorized to remove to the Federal District Court as provided by statute, 28 U. S. C. § 1441 (a).

The proceeding before the sheriff is administrative until the appeal has been taken to the district court of the county. Then the proceeding becomes a civil action pending before "those exercising judicial functions" for the purpose of reviewing the question of damages. *Myers* v. *Chicago & N. W. R. Co.,* 118 Iowa 312, 315–316, 91 N. W. 1076, 1078. When the proceeding has reached the stage of a perfected appeal and the jurisdiction of the state district court is invoked, it then becomes in its nature a civil action and subject to removal by the

defendant to the United States District Court.    *Boom Co.
v. Patterson*, 98 U. S. 403, 407.[3]

Is the petitioner such a defendant?    The petitioner
contends it is because the Code of Iowa, § 472.21, provides
that on appeal, the case shall be docketed in the
district court with the landowner as the plaintiff and the
condemnor as the defendant and thereafter tried as in an
original proceeding.    The Supreme Court of Iowa has
construed this statute to mean that in such proceedings
on appeal, the condemnor is the defendant.    *Myers* v.
*Chicago & N. W. R. Co., supra,* at 324, 91 N. W., at
1081.    This Court was urged in *Mason City R. Co.* v.
*Boynton*, 204 U. S. 570, to follow that construction put
upon this identical provision of the Iowa statute by the
Supreme Court of Iowa.    This Court declined to do
so,  saying:

> "It is said that this court is bound by the construction
> given to the state law by the state court.    Indeed the
> above § 2009 does not need construction; it enacts,
> in terms, that the landowner shall be plaintiff.    As
> the right to remove a suit is given only to the de-
> fendants therein, being non-residents of the State,
> it is argued that the state decision ends the case.
>
> "But this court must construe the Act of Congress
> regarding removal.    And it is obvious that the word
> defendant as there used is directed toward more im-
> portant matters than the burden of proof or the right
> to open and close.    It is quite conceivable that a state
> enactment might reverse the names which for the
> purposes of removal this court might think the proper
> ones to be applied.    In condemnation proceedings
> the words plaintiff and defendant can be used only

---

[3] In that case, the power of eminent domain was relied upon from
beginning to end.

in an uncommon and liberal sense. The plaintiff complains of nothing. The defendant denies no past or threatened wrong. Both parties are actors: one to acquire title, the other to get as large pay as he can. It is not necessary in order to decide that the present removal was right to say that the state decision was wrong. We leave the latter question where we find it. . . .

•          •          •          •          •

"Therefore, in a broad sense, the railroad is the plaintiff, as the institution and continuance of the proceedings depend upon its will. . . ." 204 U. S. 570, at 579–580.

For the purpose of removal, the federal law determines who is plaintiff and who is defendant. It is a question of the construction of the federal statute on removal, and not the state statute. The latter's procedural provisions cannot control the privilege of removal granted by the federal statute. *Shamrock Oil Corp.* v. *Sheets,* 313 U. S. 100, 104. Here the railroad is the plaintiff under 28 U. S. C. § 1441 (a) and cannot remove. The remand was proper.

*The Motion to Dismiss.* We think it was properly granted, and the original complaint in the Federal District Court correctly dismissed. The steps taken by the petitioner were those to perfect an appeal to the Federal District Court. The notice said it was the intention of the petitioner to docket the appeal in the federal court. The transcript on appeal was filed in the federal court, and the complaint filed sought a review of the commission's assessment of damages. The proceeding makes no sense on any other basis, for the action is brought not by the person injured, namely, the landowner, but by the railroad that inflicted the damage. It will be noticed further that there is no prayer for damages but only for

a review of the assessment, in keeping with the Iowa Code, § 472.23, which provides "no judgment shall be rendered except for costs . . . ." In short, it was an attempt of the petitioner to review the state proceedings on appeal to the Federal District Court.

The petitioner, after giving notice of appeal by filing notice with the sheriff, etc., could not perfect that appeal to any court but the court which the statute of Iowa directed, which was the District Court of that State for the County of Pottawattamie. The United States District Court for the Southern District of Iowa does not sit to review on appeal action taken administratively or judicially in a state proceeding. A state "legislature may not make a federal district court, a court of original jurisdiction, into an appellate tribunal or otherwise expand its jurisdiction . . . ." *Burford* v. *Sun Oil Co.,* 319 U. S. 315, 317. The Iowa Code does not purport to authorize such an appeal, Congress has provided none by statute, and the Federal Rules of Civil Procedure make no such provision.

We cannot ignore this plain attempt to appeal and treat the complaint as initiating an original action, as if the parties had agreed that the petitioner could take the land, leaving only a controversy as to the amount of compensation. In that instance, there would be an implied agreement that the petitioner would pay the landowner the fair value of the land. Either party might in that posture of the case ask for a declaration as to the amount of compensation owing. The claim for damages would arise in that case from the substantive rights given by the implied contract, and the suit would be one to enforce that contract. We have no such case here. The right to take the land and the ensuing right to damages here spring from the exercise of the power of eminent domain. The petitioner here seems to ignore the means by which it obtained the land and seeks to review only

the question of damages. It may not separate the question of damages and try it apart from the substantive right from which the claim for damages arose. Nor can it be said that petitioner has fully exercised its power of eminent domain, leaving nothing to be determined but the question of damages. Petitioner has possession but not title to the land. The land does not belong to the petitioner until the damages are paid. The sheriff, or the clerk of the state district court in case of appeal, must file in the county recorder's office all the papers filed in the proceeding. Code of Iowa, 1950, §§ 472.35, 472.36. The Iowa Code, § 472.41, makes this record presumptive evidence of title in the condemnor. Petitioner is still in the process of trying to get the land by virtue of its power of eminent domain. But obviously the complaint here was not filed to invoke the jurisdiction of the federal court in an eminent domain proceeding.

The Federal Rules of Civil Procedure do have elaborate provisions for procedure in the federal court in condemnation proceedings. It is obvious that the petitioner was not proceeding under these Rules. Whether it could so proceed as an original action in the United States District Court for the Southern District of Iowa is not before us.

The judgment is

*Affirmed.*

MR. JUSTICE JACKSON concurs in the result.

MR. JUSTICE BLACK, dissenting.

I think the railroad has a right to have its case tried in the United States District Court. Congress has given such courts power to try any case that is (1) a "civil" action, (2) between "Citizens of different States," (3) a "controversy," and (4) involves a matter which "exceeds the sum or value of $3,000 exclusive of interest and costs."

28 U. S. C. § 1332. If a complaint alleges these four things a district court has jurisdiction. Here the railroad's complaint shows all four. The case is plainly a "civil" action, not a criminal one. The railroad is a "citizen" of Delaware and the other parties are "citizens" of Iowa. There is a "controversy" about transferring title to property and how much the railroad must pay for it. And the dispute concerns more than $3,000—the owners want $23,888.60, the railroad is willing to pay only $10,000. The foregoing allegations were sufficient to establish and did establish district court jurisdiction. Other facts were also alleged. If these facts were relevant to nonjurisdictional issues they were properly alleged; if immaterial they could have been stricken. In any event, a court cannot lose its power to act merely because of unnecessary words. A point is made of the railroad's reference to certain prior state proceedings as though it had a right to "appeal" to the federal court from these proceedings. But assuming that the railroad confidently believed it had a right to appeal from the state commission, and therefore put a wrong label on its civil action, the District Court was still under a duty to try the case. After all, the railroad simply asked the court to fix damages for the property taken at "not to exceed $10,000," and for "such further relief as may be just and proper under the circumstances." And the pendency of a similar condemnation proceeding in the state court certainly did not destroy the federal court's jurisdiction. Nor did the District Court lose its jurisdiction because the railroad failed to invoke Rule 71A or to observe its procedure. In trying the case, the court should of course require observance of the Rule, if applicable, but failure of the railroad to comply with it is no sufficient reason for the court's refusal to settle the controversy. All of the alleged procedural mistakes attributed to the railroad could easily have been cured;

none could possibly justify a final, unconditional dismissal of its cause of action. See *Bell* v. *Hood,* 327 U. S. 678; *Brown* v. *Western R. of Alabama,* 338 U. S. 294, 298–299, 303.

MR. JUSTICE FRANKFURTER, dissenting.

Stripped of irrelevant and beclouding elements, this is a suit brought in a federal court for the ascertainment of the value of land, acquired by eminent domain under the prescribed Iowa procedure.

If the Rock Island had decided to initiate this suit in the United States District Court for the Southern District of Iowa, as it was unquestionably entitled to do since there was diversity of citizenship, *Madisonville Traction Co.* v. *Mining Co.,* 196 U. S. 239, the procedure defined by the Iowa Code would, under Rule 71A (k) of the Rules of Civil Procedure, have had to be followed. For that Rule provides that in an eminent domain proceeding the state procedure for determination of the value of the condemned land by a jury or commission, or both, must be followed.[1] The sole difference, therefore, between the initiation of such an original condemnation proceeding in the federal court, regarding which no jurisdictional question could have been raised, and what was done here is that the railroad went directly to the sheriff's commissioners instead of having the District Court send it there, or itself employ the same kind of fact-finding procedure.

Once the sheriff's commissioners had found the value of the land, there came into operation the Iowa law au-

[1] "(k) CONDEMNATION UNDER A STATE'S POWER OF EMINENT DOMAIN. The practice as herein prescribed governs in actions involving the exercise of the power of eminent domain under the law of a state, provided that if the state law makes provision for trial of any issue by jury, or for trial of the issue of compensation by jury or commission or both, that provision shall be followed."

thorizing reconsideration of the amount by a court. This marks the beginning of the judicial phase of the proceedings, "appeal" though it loosely be called.[2] One is entitled to ask what considerations bar access at this point to the Federal District Court in Iowa "sitting . . . [as] a court of that State," *Madisonville Traction Co.* v. *Mining Co., supra,* at 255, when all the statutory requirements for diversity jurisdiction are present. Can it be that there is something inexorable about the Iowa eminent domain procedure whereby it must run its full course in the Iowa courts, thus preventing the railroad from pursuing its first judicial remedy in the federal court of the State? But there is nothing in the Iowa Code or in the United States Judicial Code which ousts the federal court of its statutory jurisdiction simply because the Rock Island complied literally with the Iowa condemnation procedure.

Looked at from another aspect, this case may be seen simply as a suit for a declaration of money owed, satisfying the requirements of diversity jurisdiction. "The point in issue," in the language of *Boom Co.* v. *Patterson,* 98 U. S. 403, 407, is "the compensation to be made to the owner of the land; in other words, the value of the property taken. No other question was open to contestation in the District Court." As is spelled out in MR. JUSTICE BLACK's opinion, with which I substantially agree, this case presents a dispute over some $13,000—only that and nothing more—and as such is within the scope of 28 U. S. C. § 1332.

---

[2] As Chief Judge Gardner, dissenting on the rehearing below, pointed out, the fact that the Rock Island filed a "Notice of Appeal" as required by the Iowa Code does not affect this case. "The mere fact that the attempted appeal from the commissioners' award was not warranted and did not in itself confer jurisdiction, did not preclude the Rock Island from invoking the original jurisdiction of the Federal Court on the grounds set out in its original complaint." 204 F. 2d 954, 956.

I am not astute to find grounds for sustaining diversity jurisdiction. But while exercises in procedural dialectics so rampant in the early nineteenth century still hold for me intellectual interest, I do not think they should determine litigation in the middle of the twentieth, even when based merely on diversity of citizenship. I had supposed that the Rules of Civil Procedure for the district courts were to a considerable degree designed as a liberation from these wasteful and fettering niceties. The history of this litigation and its disposition will hardly be cited as an illustration of the fulfillment of the hope with which Congress allowed these Rules to take effect: "It is confidently expected that the adoption of the new rules will materially reduce the uncertainty, delay, expense, and the likelihood that cases may be decided on technical points of procedure which had no relation to the just determination of the controversy on its merits." H. R. Rep. No. 2743, 75th Cong., 3d Sess. 3.