The CITY OF CLEVELAND, Plaintiff-Appellee,

v.

Nell CORLEY, Defendant-Appellant.

No. 17580.

United States Court of Appeals Sixth Circuit.

July 25, 1968.

Alexander H. Martin, Jr., Cleveland, Ohio, for appellant.

Donald J. Guittar, Asst. Director of Law, Cleveland, Ohio, for appellee; Bronis J. Klementowicz, Director of Law, City of Cleveland, Cleveland, Ohio, on brief.

Before O'SULLIVAN, PHILLIPS and COMBS, Circuit Judges.

O'SULLIVAN, Circuit Judge.

Nell Corley, appellant, asks reversal of an order of the United States District Court at Cleveland, Ohio, which remanded to the Probate Court of Cuyahoga County, Ohio, a condemnation proceeding which involved the taking of appellant's interest in some Cleveland real estate. Appellant is a Negro and in this Court relies for her right to remove the cause to the Federal District Court on Title 28, U.S.C. Sections 1441(b) [1] and 1443(1). [2] Appellant's basic position can best be disclosed by setting out No. II of her Statement of Question Presented, as follows:

"Petitioner for removal (appellant herein) alleged and was prepared to show that, solely by reason of her being a member of the Negro race, she was compelled to purchase the appropriated premises at an inflated price on a 'secondary' market; that the laws, customs and usages of the State of Ohio have fostered and supported said conditions; that the statutory and decisional law of the State of

---

1. "§ 1441. Actions removable generally.

 * * * * *

 (b) Any civil action of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the United States shall be removable without regard to the citizenship or residence of the parties. Any other such action shall be removable only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought."

2. "§ 1443. Civil rights cases.

 Any of the following civil actions * * * commenced in a State court may be removed by the defendant * * *:

 (1) Against any person who is denied or cannot enforce in the courts of such State a right under any law providing for the equal civil rights of citizens of the United States, or of all persons within the jurisdiction thereof; * * *."

Ohio, separately and together, prevent presentation of the described conditions at trial in the courts of the State of Ohio for consideration by the jury, while Rule 71A(e) of the Federal Rules of Civil Procedure imposes no such restrictions. In the premises thus stated, is the appropriation proceeding removable under the provisions of Section 1443(1) of Title 28 of the United States Code?"

The District Judge, on July 11, 1966, granted the motion of appellee, City of Cleveland, to remand to the Probate Court of Cuyahoga County and thereafter denied appellant's motions for reconsideration and for injunction to stay proceedings pendente lite. We affirm.

### 1. Removal under § 1441—federal question.

■ The condemnation action in the Cuyahoga Probate Court is not a civil action of which "The district courts have original jurisdiction founded on a claim or right *arising under the Constitution, treaties or laws of the United States * * *.*" 28 U.S.C. § 1441(b). Neither is there diversity of citizenship which would justify removal to the district court under 28 U.S.C. § 1332. It is clear that with the requisite diversity state condemnation actions may be removed to and tried in the appropriate district courts. Mississippi & Rum River Boom Co. v. Patterson, 98 U.S. 403, 407, 25 L.Ed. 206 (1878); Chicago, R. I. & Pac. R. Co. v. Stude, 204 F.2d 116, 119 (8th Cir. 1953), affirmed, 346 U.S. 574, 578-579, 74 S.Ct. 290, 98 L.Ed. 317 (1954); Madisonville Traction Co. v. Bernard Mining Co., 196 U.S. 239, 240, 25 S.Ct. 254 (1905).

■ Absent diversity, the district court jurisdiction attaches if the action is founded "on a claim or right *arising* under the Constitution, treaties or laws of the United States * * *," §§ 1441(b), 1331(a). Ohio's condemnation action, though in an ultimate sense governed by the federal due process standard of "just compensation," did not *arise* out of the Constitution, treaties or laws of the United States. The syllabus of Venner v. N. Y. C. R. Co., 293 F. 373 (6th Cir. 1923), says:

"A cause of action does not 'arise under' federal laws so as to justify removal, unless it arises out of and depends on those laws, so that plaintiff must show, both in stating and in proving his case, that his right to recover stands on federal laws; and otherwise, even though his complaint may disclose that the case will turn on and be ruled by some federal law under which defendant is claiming, federal jurisdiction will fail."

■ Appellant also claims the existence of federal question removal jurisdiction on the basis that the Cleveland condemnation action was a part of a federal urban renewal program, and presumably subject to the requirements of 42 U.S.C. § 3072, which prescribes certain general standards to be followed by state agencies acquiring property by eminent domain as part of a federally financed development program. Assuming appellant is correct that the statute has application here, we do not think the state court condemnation proceeding thereby *arose under* federal law. In a similar case, where the federal Housing and Home Finance Agency, along with various state agencies was involved in a Chicago urban renewal program, Harrison-Halsted Community Group, Inc. v. Housing and Home Finance Agency, et al., 310 F.2d 99 (7th Cir. 1962), the Court of Appeals for the Seventh Circuit held that no federal question was presented. That case involved a declaratory judgment action to declare improper and enjoin an Illinois state condemnation action. The complaint set out broad allegations of discrimination against minority groups—Mexicans and Negroes—whose properties were to be taken. In holding that no federal question was involved, the Seventh Circuit said:

"Nevertheless, and in spite of the outraged feelings of many people who have interests in this area, we have in

**44**

mind that questions arising from the taking of property by condemnation for state purposes, are ordinarily matters for determination by the state courts. The plaintiffs in this case have sought relief in a federal court. Whether they may properly do so depends principally on whether they have standing to sue and whether a substantial federal question is involved."

\* \* \* \* \* \*

"Plaintiffs argue the pending condemnation suits in the Illinois state court do not offer to them an adequate forum for the vindication of their rights."

\* \* \* \* \* \*

"We have no right or justification to speculate that the state courts of Illinois will not protect any rights the plaintiffs may have. The United States Supreme Court and other federal courts have repeatedly refused to entertain suits in which plaintiffs' personal or private legal rights have not been infringed and could only be infringed by an improper judgment in a condemnation proceeding. State of Georgia v. Chattanooga, 264 U.S. 472, 483–484, 44 S.Ct. 369, 68 L.Ed. 796 \* \* \*; Amalgamated Clothing Workers of America et al. v. Richmond Brothers Co., 348 U.S. 511, 518–519, 75 S.Ct. 452, 99 L.Ed. 600, \* \* \*; Southern California Petroleum Corporation v. Harper, 5 Cir., 273 F.2d 715." 310 F.2d, at 103, 106.

2. Removal under § 1443(1).

Appellant also assigns as a reason for her right of removal that as a Negro she had been compelled to purchase the premises to be condemned "at an inflated price on a 'secondary market'" and, conclusionally, asserts that such condition had been fostered by "the laws, customs and usages of the State of Ohio." Then, without citation to any statute or decision, she again conclusionally asserts:

"that the statutory and decisional law of the State of Ohio, separately and together, prevent presentation of the described conditions at trial in the courts of the State of Ohio for consideration by the jury \* \* \*."

Neither in the District Court nor in her address to us did appellant set out any statute of Ohio or any decision of its courts to support her above allegations. The District Judge reviewed the Ohio statutes and its decisional law and quite properly concluded that nothing therein contained would authorize any discriminatory visitation upon appellant because of her race. We are likewise satisfied that such is true. We so conclude from the District Judge's finding and from our own notice of relevant Ohio law.

We consider that the recent Supreme Court decisions in Georgia v. Rachel, 384 U.S. 780, 86 S.Ct. 1783, 16 L.Ed.2d 925 (1966), and Greenwood v. Peacock, 384 U.S. 808, 86 S.Ct. 1800, 16 L.Ed.2d 944 (1966), support the action of the District Judge and require our affirmance of his judgment. Although removal of state criminal prosecutions was there involved, these cases provide controlling law for the present case by virtue of the exhaustive general treatment there given by the Supreme Court to the scope of removal under § 1443(1).

In Georgia v. Rachel, Negroes had been arrested when seeking service at privately owned restaurants. They were indicted under a Georgia statute making it a misdemeanor to refuse to leave the premises of another when requested to do so by a person in charge thereof. The Supreme Court held that the cases were removable because the Georgia law came directly into collision with the Civil Rights Act of 1964, which provided for specific civil rights in terms of racial equality. In Greenwood v. Peacock, removal was denied in that the persons there involved were prosecuted for obstructing public streets, for assault, disturbing the peace, interfering with an officer in the performance of his duty and a miscellany of other violations of Mississippi laws and ordinances of one

of its cities. The Supreme Court held that the ordinances and state laws could not be read as being designed to be enforced discriminatorily, nor would they collide with or deny enforcement of any "law providing for the equal civil rights of citizens of the United States, or of all persons within the jurisdiction thereof." 28 U.S.C. § 1443(1).

It would be presumptuous of this Court to attempt improvement or extension of the comprehensive exposition of relevant law in the opinions of Mr. Justice Stewart, speaking for the majority in both of these cases, notwithstanding the vigorous dissent authored by Mr. Justice Douglas and concurred in by three of his colleagues. In Georgia v. Rachel, Justice Stewart explained the delimited reach of "any law providing for the equal civil rights of citizens of the United States," as set out in § 1443(1), as follows:

"On the basis of the historical material that is available, we conclude that the phrase 'any law providing for * * * equal civil rights' must be construed to mean any law providing for specific civil rights stated in terms of racial equality. Thus, the defendants' broad contentions under the First Amendment and the Due Process Clause of the Fourteenth Amendment cannot support a valid claim for removal under § 1443, because the guarantees of those clauses are phrased in terms of general application available to all persons or citizens, rather than in the specific language of racial equality that § 1443 demands. As the Court of Appeals for the Second Circuit has concluded, * * * 'When the removal statute speaks of "any law providing for equal rights," it refers to those laws that are couched in terms of equality, such as the historic and the recent equal rights statutes, as distinguished from laws, of which the due process clause and 42 U.S.C. § 1983 are sufficient examples, that confer equal rights in the sense, vital to

our way of life, of bestowing them upon all.' " 384 U.S., at 792, 86 S.Ct. at 1790.

Referring to decisions in the history of the subject before us, he said:

"*Strauder* and *Rives* [3] thus teach that removal is not warranted by an assertion that a denial of rights of equality may take place and go uncorrected at trial. Removal is warranted only if it can be predicted by reference to a law of general application that the defendant will be denied or cannot enforce the specified federal rights in the state courts. A state statute authorizing the denial affords an ample basis for such a prediction." 384 U.S., at 800, 86 S.Ct. at 1794.

It cannot be predicted that the Ohio condemnation statute is of such character that upon its application the appellant "will be denied or cannot enforce the [appellant's] specified federal rights in the state courts."

Upon review of the past consistency of many courts in adhering to his exposition of the law, Justice Stewart concluded:

"The *Strauder-Rives* doctrine, as consistently applied in all these cases, required a removal petition to allege, not merely that rights of equality would be denied or could not be enforced, but that the denial would take place in the courts of the State. The doctrine also required that the denial be manifest in a formal expression of state law. This requirement served two ends. It ensured that removal would be available only in cases where the predicted denial appeared with relative clarity prior to trial. It also ensured that the task of prediction would not involve a detailed analysis by a federal judge of the likely disposition of particular federal claims by particular state courts. That task not only would have been difficult, but it also would have involved federal judges in the unseemly process of pre-

---

3. Strauder v. West Virginia, 100 U.S. 303 (1880) and Virginia v. Rives, 100 U.S. 313 (1880).

judging their brethren of the state courts." 384 U.S., at 803–804, 86 S. Ct. at 1796.

And in Greenwood v. Peacock, in which removal was denied, he further summarized as follows:

"Those cases all stand for at least one basic proposition: It is *not* enough to support removal under § 1443(1) to allege or show that the defendant's federal equal civil rights have been illegally and corruptly denied by state administrative officials in advance of trial, that the charges against the defendant are false, or that the defendant is unable to obtain a fair trial in a particular state court. * * * The civil rights removal statute does not require and does not permit the judges of the federal courts to put their brethren of the state judiciary on trial. Under § 1443(1), the vindication of the defendant's federal rights is left to the state courts except in the rare situations where it can be clearly predicted by reason of the operation of a pervasive and explicit state or federal law that those rights will inevitably be denied by the very act of bringing the defendant to trial in the state court. State of Georgia v. Rachel, supra; Strauder v. West Virginia, 100 U.S. 303, 25 L.Ed. 664." 384 U.S., at 827–828, 86 S.Ct. at 1812.

 It is clear from these cases that in order to justify removal under § 1443(1), a defendant must meet two crucial requirements: First, he must show the existence of a federal right guaranteed by a federal law "providing for specific civil rights stated in terms of racial equality," Georgia v. Rachel, supra, at 792; Second, the predicted denial of such right in the state court must "be manifest in a formal expression of state law," Id., at 803. Appellant has asserted at various stages of this litigation that she will be denied rights guaranteed by the Due Process and Equal Protection Clauses of the Constitution as well as by §§ 1981–1983, 42 U.S.C. Assuming arguendo that § 1981 meets the test of being a racial equality civil rights statute, see Greenwood v. Peacock, supra, at 825, we think nevertheless that appellant has not met the second test of showing that the Ohio condemnation statute or other relevant Ohio law *will inevitably deny* appellant's asserted federal rights in the state courts of Ohio.

In Sunflower County Colored Baptist Association v. Trustees of Indianola Municipal Separate School District, 369 F. 2d 795 (5th Cir.1966), the Fifth Circuit had before it a state court condemnation suit, sought to be removed to the federal District Court under 28 U.S.C. § 1443(1). We will not lengthen the opinion by detailed recital of its reasons for denial of removal. It is quite in point here. We quote this much:

"Finally, the Association's claim that their federal civil rights will be denied must be based on the state constitution, a statute, municipal ordinance, rule of court or regulatory provisions binding on the court which expressly deny such federal rights. See State of Georgia v. Rachel, supra, 384 U.S. 780, 86 S.Ct. 1783, 16 L.Ed.2d at 940. No Mississippi statute, including the eminent domain statute, Mississippi Code Ann. § 2781, which confers on municipal separate school districts the power to acquire property for school purposes, or the Mississippi constitutional provision allowing the taking of property for public use, Art. 3, § 17, precisely conflicts and conclusively denies the federal rights of the Association." 369 F.2d at 797–798.

See also our own decisions consistent with what we say here. Townsend v. State of Ohio, 366 F.2d 33 (6th Cir. 1966); Grubbs v. Pound, 374 F.2d 448, 450 (6th Cir.1967).

Affirmed.