**Wanda WESTRIDGE, Maurice Westridge, Plaintiffs,**

v.

**ALLSTATE INSURANCE COMPANY, Defendant.**

Civ. No. 87–5108.

United States District Court, W.D. Arkansas, Fayetteville Division.

Jan. 25, 1988.

Wanda and Maurice Westridge, pro se.

Thomas B. Pryor, Pryor, Barry, Smith & Karber, Ft. Smith, Ark., for defendant.

### MEMORANDUM OPINION

H. FRANKLIN WATERS, Chief Judge.

Wanda Westridge and Maurice Westridge filed this lawsuit, *pro se*, in the

Circuit Court of Washington County, Arkansas, alleging that the insurance carrier issued to them a policy of insurance which went into effect in May of 1981, insuring two separate automobiles, one owned by Wanda Westridge, and the other by Maurice Westridge. They claim that they received a letter dated June 8, 1987, from Allstate stating that as of 12:01 a.m. on July 28, 1987, Allstate "will cancell [sic]" the insurance provided by these policies. They say that the reasons given by Allstate for the termination of this policy were not meritorious, and they ask for a temporary injunction and damages in the total amount of $75,000.

Defendant, within the time and in the manner permitted by 28 U.S.C. § 1446, removed the case to this court and filed its answer, claiming that the insurance policy in question was due to terminate by its terms on July 27, 1987, and that the June 8 letter referred to in the complaint was notice of the intention not to renew the policy upon termination.

Plaintiffs then filed a paper they called "Ex Parte Motion for Extension of Time" in which they ask that they "be granted an extension of time in which to reply to the defendant's removal of the afore [sic] numbered case." As a result of that filing, the court wrote the Westridges advising them that removal petitions do not call for a reply and that if they felt that the removal was not proper they should file a motion to remand. In that letter, the court also advised them that they should reply, in the time permitted by the court's rules, to a motion for summary judgment filed by the insurance carrier a few days before.

The plaintiffs next filed a motion to remand. Although it is difficult to determine from the motion why the plaintiffs believe that the case should be remanded to state court, they say that it is because the state court "has original jurisdiction as granted by the Constitution of the State of Arkansas Art 12 Rule 11; Foreign Corporations doing Business in the state: as to contracts made or business done in the State, they (foreign Corporations) shall be subject to

the same regulations, limitationts [sic] and liabilities as like corporations of the state."

The court wrote Mr. Westridge with whom, as will be further set out below, this court has had previous contact, a letter attempting to explain to him that for a little over 200 years state courts and federal courts have had concurrent jurisdiction in cases between citizens of different states where the amount in controversy meets a jurisdictional requirement. The motion to remand was denied. The day that the order denying the motion to remand was filed, Mr. Westridge filed, also *pro se*, a notice of appeal to the Court of Appeals for the Eighth Circuit. As far as this court can determine, that appeal has not yet been acted upon by that court.

The Westridges have not responded to the motion for summary judgment although the time to do so long ago expired. For the reasons set forth below, the court has concluded that the motion should be acted on by this court at this time even though the attempted appeal of the court's denial of the motion to remand has not yet been disposed of by the court of appeals.

*Jurisdiction*

■ This court finds that it has jurisdiction to rule on the motion for summary judgment even though this court's refusal to remand the matter is on appeal. This is because, in the court's view, the filing of the notice of appeal is clearly an attempt to appeal a non-appealable order. Of course, 28 U.S.C. § 1291 allows appeals only from "final decisions" of the district courts. The courts have rather uniformly held that an order denying a motion to remand is not a final order and is, thus, not appealable. *See* the numerous cases cited at Note 38 of 15 Wright, Miller & Cooper, *Federal Practice and Procedure: Jurisdiction* § 3914. In fact, the United States Supreme Court, in dictum, in *Chicago, R.I. & P.R. Co. v. Stude*, 346 U.S. 574, 578, 74 S.Ct. 290, 293, 98 L.Ed. 317 (1954), said that an order denying a motion to remand a removed case to a state court "[o]bviously ... is not final and appealable if standing alone."

Since that is true, this court has jurisdiction to proceed in this matter and to rule on

the motion for summary judgment. The Court of Appeals for the Second Circuit, in *Leonhard v. United States*, 633 F.2d 599 (2d Cir.1980), in a well-reasoned opinion, held that the filing of the notice of appeal of a non-appealable order does not deprive the trial court of jurisdiction, and said, "[W]e see no efficiency to be gained by allowing a party arbitrarily to halt the district court proceedings by filing a plainly unauthorized notice which confers on this court the power to do nothing but dismiss the appeal." *Id.* at 610.

In fact, as pointed out in that decision, by far a majority of the courts of appeal that have ruled on this issue have held that the attempted appeal of a non-appealable order has no effect on the jurisdiction of the trial court.[1] In short, the law in most circuits, apparently including the Eighth Circuit, is that a trial court is not deprived of jurisdiction to continue with the case by the filing of a notice of appeal which is "manifestly deficient." *Hodgson, supra,* and *Hitchmon, supra.* Not only is this holding supported by the courts of appeal for most circuits that have ruled on this issue, in this court's view it is also supported by common sense. In the words of the *Hodgson* court, 460 F.2d at 328: "Otherwise, a litigant could temporarily deprive a court of jurisdiction at any and every critical juncture."

The Westridge notice of appeal is clearly premature and frivolous and is, thus, "manifestly deficient." This court continues to have jurisdiction to proceed in this matter and will now rule on the motion for summary judgment which has been pending several months.

*Motion For Summary Judgment*

■ The court concludes that there is no genuine issue as to any material fact in relation to the issuance and non-renewal of the policy of insurance in question and

that, thus, the motion for summary judgment should be granted.

The defendant attached to its motion for summary judgment a copy of the policy of insurance sued on. It shows that the policy was initially issued for a six-month period beginning July 27, 1986, and ending January 27, 1987, and was extended for a six-month period to end on July 27, 1987. In a letter dated June 8, 1987, the plaintiffs were advised that, upon expiration of the insurance coverage at 12:01 a.m. on July 27, 1987, the policy would not be renewed. The letter also advised the Westridges of the reasons for the decision not to renew.

Under a heading **"When And Where The Policy Applies,"** the policy says: "Your policy applies only during the premiums period ... The premium period is shown on the declarations page." Thus, the contract, by its express terms, applies only until 12:01 a.m. on July 27, 1987. In spite of this, the Westridges seem to believe that, for some reason not specified by them, the insurance company was required to renew the policy upon its expiration. That is simply not the law.

Insurance is nothing more than a contract between the insurance carrier and its insured, and is to be governed by the ordinary rules of interpretation of contracts. *Couch on Insurance* § 45:294 at 620, and *Perkins v. Clinton State Bank*, 593 F.2d 327 (8th Cir.1979). A common sense approach should be used, and generally the words employed in the policy are to be understood in their ordinary sense. *Wommack v. United States Fire Ins. Co.*, 323 F.Supp. 981 (W.D.Ark.1971).

The policy in this case says, in rather plain and understandable terms, that it provides coverage to the Westridges until July 27, 1987. The court believes that most people, even those who have less knowl-

---

1. *Cochran v. Birkel,* 651 F.2d 1219 (6th Cir. 1981), *cert. denied,* 454 U.S. 1152, 102 S.Ct. 1020, 71 L.Ed.2d 307 (1982); *Leonhard v. United States, supra; United States v. Hitchmond,* 602 F.2d 689 (5th Cir.1979); *Hodgson v. Mahoney,* 460 F.2d 326 (1st Cir.), *cert. denied,* 409 U.S. 1039, 93 S.Ct. 519, 34 L.Ed.2d 488 (1972); *Ruby v. Secretary of the United States Navy,* 365 F.2d 385 (9th Cir.1966) (en banc), *cert. denied,* 386 U.S. 1011, 87 S.Ct. 1358, 18 L.Ed.2d 1442 (1967); *Euziere v. United States,* 266 F.2d 88 (10th Cir. 1959), *vacated on other grounds,* 364 U.S. 282, 80 S.Ct. 1615, 4 L.Ed.2d 1720 (1960); *Riddle v. Hudgins,* 58 F. 490 (8th Cir.1893). *But see Williams v. Bernhardt Bros. Tugboat Serv., Inc.,* 357 F.2d 883 (7th Cir.1966), and *District 65, Distributive, Processing & Office Workers Union v. McKague,* 216 F.2d 153 (3d Cir.1954).

edge about the law than Mr. Westridge seems to hold himself out to have, understand that, if someone enters into a contract with another agreeing to do something until a specified date, the obligation to do that thing ends on that date unless the contract entered into provides otherwise.

Not only is that position supported by common sense, it is equally supported by the law. The law in this respect in almost every jurisdiction is set forth in 43 Am. Jur.2d *Insurance* § 443 at 509 as follows:

Ordinarily, to bind the insurer, there must be a contract to renew as distinguished from a mere custom to renew and, absent a statutory or policy provision to the contrary, the insurer has the right to decline to renew for any reason whatever or for no reason at all." (Citing cases).

18 *Couch on Insurance 2d* § 68.12 at 15 says:

Where there is no clause in a policy expressly granting a privilege or imposing a duty of renewal, neither party has any right to require a renewal. Thus, the rights of the parties under such a contract are mutual in that neither is bound to renew the contract. And under such a policy the insurer may decline to renew the policy at the end of a premium payment date." (Citing cases).

The general rule set forth in the treatises quoted above also is the rule in Arkansas. In *Farmers Ins. Co. v. Hall,* 263 Ark. 734, 567 S.W.2d 296 (1978), the Arkansas Supreme Court said, in a case involving the renewal of an insurance policy, that: "Appellant had no obligation to offer to renew the policy." Thus, the law in Arkansas and most other jurisdictions clearly is that, unless a statute provides otherwise, an insurance carrier has the right to decline to renew a policy upon the termination of the policy period for any reason or no reason at all. The only Arkansas statute covering policy renewals is Ark.Stat.Ann. § 66–4010. That statute provides:

No insurer shall fail to renew a policy unless it shall mail or deliver to the named insured at the address shown in the policy, at least twenty (20) days' notice of its intention not to renew; and unless it shall also mail or deliver to its agent serving the policy, at least thirty (30) days in advance of nonrenewal, a statement of the grounds for nonrenewal. . . .

Unless a statement of the grounds for nonrenewal accompanies or is included in the notice of nonrenewal, the notice of nonrenewal shall state or be accompanied by a statement that upon written request of the named insured, mailed or delivered to the insurer, not less than fifteen (15) days prior to the effective date of such nonrenewal, the insurer shall specify the grounds for such nonrenewal.

In this case, there is no question but that the statute was complied with. The Westridges received notice of the intent not to renew more than twenty (20) days prior to the expiration of the policy, and that notice contained the insurance carrier's reasons for declining to renew the policy. In addition, a statement of the grounds for non-renewal was furnished to the insurance agent through whom the insurance policy was issued more than thirty (30) days in advance of expiration as required by the statute.

Nothing else is required. The Westridges seem to believe that the reasons given for the decision not to renew are groundless. Even if that is true, that is beside the point. Nothing in the statute, nor any case law, requires that the insurance carrier decline to renew only for "good" reasons. The policy of insurance is simply a contract in which the insurance carrier agreed with the insured that it would provide insurance coverage for the period set forth in the policy. When that contract expired by its terms, neither side was required to renew it, and the insurance carrier could decline to do so simply upon compliance with the provisions of Ark.Stat.Ann. § 60–4010. It is clear that there was compliance with this statute. Thus, the complaint filed in this case by the Westridges is clearly without merit. The motion for summary judgment will be granted by separate order.

*Rule 11 Sanctions*

■ In our modern day litigious society this court and other federal courts are plagued by frivolous lawsuits and the filing of pleadings totally without merit, most, but by no means all, of which are filed by non-lawyers. In fact, there appears to be a small but significant number of "hobbyist litigators" who seem to derive enjoyment from filing and attempting to litigate frivolous matters. That appears to be what they do in their spare time. These lawsuits are not only a nuisance, but they threaten to delay justice for those who should be in federal court and who have legitimate and significant matters to litigate.

Let the court hasten to say that it is not critical of lawsuits brought by all *pro se* litigants because it is recognized that some individuals legitimately believe that they have claims to present and cannot afford an attorney to present them. In those cases, the court recognizes that it should read the complaints filed liberally with a view to allowing legitimate claims to proceed to a proper resolution. However, in this court's view, no person has a "right" to encumber the court system by repeated filings of frivolous matters apparently designed to satisfy his appetite for litigation.

This matter, in the court's view, was obviously without merit when it was filed in the state court. Then, when the case was removed to this court, Mr. Westridge filed an even more obviously frivolous motion to remand. This was done after the court, by letter, advised Mr. Westridge that the petition would appear to be regular on its face since the amount in controversy is in excess of $10,000 and since there appears to be a complete diversity of citizenship. In spite of that, the motion to remand was filed and pursued by the plaintiffs and, when the court decided it against them, the case was appealed to the court of appeals. The court could, perhaps, overlook this if this was the first experience that it has had with Mr. Westridge. As indicated above, it is not.

In the first place, Mr. Westridge seems to hold himself out as a person with knowledge in the ways of the law. Attached as an exhibit to this opinion is a photocopy of one of the many letters which this court has received from Mr. Westridge over the last couple of years. Note that under his tiger letterhead he advertises himself as a "Consultant & Negotiator" and apparently hopes to provide services to someone in relation to "Divorce Settlement," "Real Estate," "Business," and "Bankruptcy Forms." The court believes that it is not unreasonable to expect that someone with expertise in those areas should have been able to read, before the motion to remand was filed and pursued, article II, § 1, of the Constitution of the United States, and the removal statutes (28 U.S.C. § 1332 and § 1441), and determine that the proposed filing would be frivolous. He certainly should have been able to determine that after he received the court's letter of September 24, 1987, explaining in detail the basis for the court's ruling, and citing and quoting the pertinent portions of the Constitution and the removal statutes referred to above. However, Mr. Westridge responded by sending the court the letter attached as an exhibit to this memorandum opinion and by filing a notice of appeal.

Again, the court could possibly overlook all of that if it had not been for this court's prior experience with Mr. Westridge. That experience began in May of 1986 when Mr. Westridge filed, in behalf of himself, Case No. 86–5059 in this court. He instituted that litigation by means of a paper which he called "Petition" and in which he attempted to state a cause of action against a law firm in New Orleans and a title company in California, allegedly for misdeeds occurring in 1978 in Louisiana where he was then a resident, involving lands and other business interests in which he apparently had some involvement. After the "Petition" was filed, and after the court had reviewed it, in an attempt to help Mr. Westridge and, in turn, the court, by encouraging him to file the matter in a court which would have *in personam* jurisdiction of the defendants, the court wrote Mr. Westridge a letter dated May 8, 1986. In that letter, Mr. Westridge was assured that he had a right to represent himself if he desired but that he had not properly alleged subject

matter jurisdiction and, in view of that, any action taken by the court would be a nullity. The court went on to advise Mr. Westridge that:

In addition to the subject matter jurisdiction problems discussed above, the Petition as filed does not allege sufficient connection of the defendants with the State of Arkansas to give this court personal jurisdiction over any of them. You do not allege that the defendants did anything in the State of Arkansas or to any degree had sufficient connection with the state to give this court personal jurisdiction of the defendants.

In spite of this "advice" Mr. Westridge amended his Petition to correct the subject matter jurisdiction problems and pursued the litigation to the point where this court now has a file more than two inches thick. Numerous frivolous filings were made in the case by Mr. Westridge, and the court ultimately, by letter opinion dated July 7, 1986, granted the defendants' motion to dismiss and gave Mr. Westridge ten days to show cause why Rule 11 sanctions should not be imposed. This show cause order was responded to by a paper which argued that the court was wrong in granting the motion to dismiss, but, by no means, showing any cause why Rule 11 sanctions should not be imposed. Then, within the next couple of weeks, he filed two more papers which did not bear to any degree on the issues before the court. By order dated October 16, 1986, the court imposed sanctions in the amount of $1,769.75, representing the attorney's fees expended by the defendants in defending the matter. Mr. Westridge appealed the matter and that appeal appears to be presently pending before the Court of Appeals for the Eighth Circuit.

In October of 1987 Mr. Westridge filed in this court an application to proceed in forma pauperis in a case assigned the number F–M–87–7, and a proposed complaint against John Lineberger, Washington County Chancery Judge. It was alleged in the complaint that Judge Lineberger, acting in his capacity as the judge, removed a lien which had been placed on certain real property by Mr. Westridge. The proposed complaint asked for judgment "against John Lineberger personally and as Judge of the State of Arkansas" in the amount of $450,000. After reviewing the application, the court wrote Mr. Westridge on October 15, 1987, advising him that it was under a duty to scrutinize lawsuits which are filed in forma pauperis and to dismiss them if it is clear from the face of the pleadings that they have no merit, citing *Haugen v. Sutherlin*, 804 F.2d 490 (8th Cir.1986). The court further explained that it had been the law since at least 1872 that judges with jurisdiction of the matter, acting in their judicial capacity, are absolutely immune from suit, citing *Stump v. Sparkman*, 435 U.S. 349, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978); *Bradley v. Fisher*, 80 U.S. (13 Wall.) 335, 20 L.Ed. 646 (1872); *Callahan v. Rendlen*, 806 F.2d 795 (8th Cir.1986); and *Birch v. Mazander*, 678 F.2d 754 (8th Cir.1982). The motion to proceed in forma pauperis was denied.

Mr. Westridge then filed a notice of appeal and asked that he be allowed to proceed on appeal in forma pauperis. The court denied that request and Mr. Westridge then requested that the court of appeals allow him to proceed in forma pauperis. That request was denied by order dated November 10, 1987, and the court of appeals dismissed the matter as frivolous and without merit. According to a copy of a letter dated November 14, 1987, written by Mr. Westridge, he has now appealed, or attempted to appeal, the matter to the United States Supreme Court.

The court has not detailed its prior experiences with Mr. Westridge to impose sanctions against him in relation to his conduct in those cases. Rule 11 might not authorize that. Instead, it is the court's purpose to show that the court is not dealing with an inexperienced lay person with a complaint to make who has innocently wandered into a legal thicket, only then to find that he was "over his head" and out of his element. Rather, we are dealing with an individual who, by word, deed and letterhead, holds himself out to be knowledgeable in the ways of the law, and who repeatedly heaps frivolous filing upon friv-

olous filing all the way to the United States Supreme Court, even after it should be apparent to a reasonably aware individual with far less legal expertise than Mr. Westridge seems to believe he has that he is wasting his time and the time of the court and the other parties and their counsel. Thus, the court believes that prior conduct in other cases is highly relevant in determining whether his conduct in this case warrants the imposition of sanctions.

As indicated above, this court recognizes that legitimate complaints are often made by *pro se* litigants, and that practice is not to be discouraged by this court. However, the court believes that Mr. Westridge's litigation detailed above is an example of a problem that exists in our "system." Because of our litigious society and the ease of access to the courts, a great deal of time and money is spent in disposing of totally frivolous litigation. For every frivolous lawsuit that is filed, at least the court must expend time and energy in disposing of it. If it cannot be disposed of prior to summons being issued, then the defendants are required to hire a lawyer and defend themselves from the frivolous charges. When the matter is finally disposed of by the trial court, litigants with the bent of Mr. Westridge then require the expenditure of significant additional amounts of time, money and energy by the other side and by higher courts to dispose of frivolous appeals.

It was this "problem" that resulted in the passage of Rule 11 of the Federal Rules of Civil Procedure. That rule mandates (it says *shall* not may) that trial courts impose appropriate sanctions in cases where frivolous filings are made. This court intends to follow the dictates of that rule in all cases in which the court believes frivolous papers are filed, including cases filed by pro se litigants where the court believes the circumstances justify.

In *Kurkowski v. Volcker*, 819 F.2d 201, 204 (8th Cir.1987), the court said, in words that are particularly appropriate to this case, that:

We recognize that pro se complaints are read liberally, but they still may be frivolous if filed in the face of previous dismissals involving the exact same parties under the exact same legal theories.... Rule 11 was adopted to spare innocent parties and overburdened courts from the filing of frivolous lawsuits. Another purpose is to deter plaintiffs from bringing actions that lack in factual or legal support.

As set forth above, this court believes that it has, during the past couple of years at every opportunity, attempted to explain to Mr. Westridge that his filings were frivolous and attempted to steer him ·in the proper direction. In spite of that, he has consistently continued to pursue the matter with the filing of numerous papers without merit and, after the matter was finally disposed of by the trial court, he has burdened the higher courts by repeated appeals, apparently even to the United States Supreme Court. In *Galvan v. Cameron Mutual Ins. Co.*, 831 F.2d 804 (8th Cir. 1987), the court of appeals for this circuit said:

The order of the district court clearly explains that any remedy available in this case must be pursued in state court. Yet, Galvan nevertheless brought this appeal without any colorable chance of success. Regardless of Galvan's *pro se*, in forma pauperis status, he has "no right to prostitute the processes of the court by bringing a frivolous * * * action." *Duhart v. Carlson*, 469 F.2d 471, 478 (10th Cir.1972), *cert. denied*, 410 U.S. 958, 93 S.Ct. 1431, 35 L.Ed.2d 692 (1973). Even a *pro se* litigant has a duty to inquire into whether his claim is worth pursuing further. *Harris v. Forsyth*, 742 F.2d 1277, 1278 (11th Cir.1984).

*Id.* at 805.

Based on the file that it now has before it, and its knowledge of Mr. Westridge's "experience" and his propensity to pursue frivolous matters, the court believes that it is appropriate for it to impose Rule 11 sanctions against him for pursuing this matter to the point that he has.[2] Mr. Wes-

---

**2.** The court recognizes that Rule 11 appears by its terms to apply to papers signed by an attor-

ney or a party and filed in a court to which the Federal Rules of Civil Procedure apply. Thus,

tridge shall have **two weeks from the date of this opinion** to show cause why Rule 11 sanctions should not be imposed against him by an order directing that he pay to the defendant an amount equal to its reasonable attorney's fees and expenses incurred in defending this matter. During the same fourteen (14) day period, defend-

the court recognizes that it might not, on the basis of the dictates of this rule, impose sanctions because of the filing of the frivolous complaint in this case in state court. However, as detailed above, Mr. Westridge insisted on filing and pursuing a motion to remand that was

ant is directed to provide to the court, by affidavit or other appropriate means, proof of the amount of such reasonable attorney's fees and expenses.

The motion for summary judgment will be granted and the plaintiffs directed to show cause as outlined above by separate order.

totally without merit, even though the court explained to him that the removal appeared to be regular on its face. This action by Mr. Westridge caused this court and defendant's attorneys to expend a substantial amount of time in disposing of the frivolous motion.

EXHIBIT

## *Maurice Westridge*

Consultant & Negotiator

Divorce Settlement
Real Estate
Business
Bankruptcy Forms

Rt 1 Box 230     Winslow, Arkansas, 72959     501-634-7243

September 27, 1987

RECEIVED
CHAMBERS OF
H. FRANKLIN WATERS

SEP 29 1987

U.S. DISTRICT JUDGE

Hon. H. Franklin Waters, Judge
US District Court
35 Mountain Street
Fayetteville, Ar. 72701

RE: WESTRIDGE VS ALLSTATE INSURANCE CO.
USDC CASE # 87-5108

PERSONAL LETTER, MAY BE PUT IN RECORD IF YOU WISH

Dear Judge:

I am in receipt of your letter dated September 24, 1987 and again I wish to thank you for your informative letter. I wish to refer to your 4th paragraph where you refer to the Judicial Act of 1789 ( which by the way was the first judicial act past) on refelection I wrote you those same words in my brief to you in Westridge vs Steeg & OConnor USDC, WDA: Case # 86-5059 but it didn't make any impression on you. That case is still pending in the 8th Circuit thanks to your actions.

It appears that you are pro to swing like a pendulum but always favoring the money side of the coin a la Judge Bork
EXAMPLE:
a. Westridge vs Steeg, Ball the attorney for that thief Steeg, I have the evidence.
b. The CO/Op case where Ball again was the attorney and was found guilty of fraud, you lowered the award Ball has to pay by $1,500,000.00 to the detriment of a lot of old people who will be lucky to get 50¢ on a dollar, because of your action.
Westridge vs Allstate  your refusl to remand a State Action.

I look forward one day to meet you and speak about the law and how it effects peoples lives,when an arbitary word such as frivilous is used with distain, You sir have my sympathy.

Yours truly,

Maurice Westridge

WEST KEYNUMBERSYSTEM