No. 93-599

IN THE SUPREME COURT OF THE STATE OF MONTANA

1994

DENNIS and DARLENE LEAHY,

      Petitioners and Appellants,

-v-

DEPARTMENT OF REVENUE, STATE OF
MONTANA, and the STATE TAX APPEAL BOARD,

      Respondents and Respondents.

APPEAL FROM:   District Court of the First Judicial District,
In and for the County of Lewis and Clark,
The Honorable Dorothy McCarter, Judge presiding.


COUNSEL OF RECORD:

      For Appellants:

      Thomas C. Morrison, Helena, Montana

      For Respondents:

      Paul Van Tricht, Tax Counsel, Montana Department of
Revenue, Helena, Montana

**FILED**

AUG 4 1994

Filed: *Ed Smith*
CLERK OF SUPREME COURT
STATE OF MONTANA

Submitted on Briefs:   May 11, 1994

Decided:   August 4, 1994

Clerk

Justice James C. Nelson delivered the Opinion of the Court.

This is an appeal from a First Judicial District Court, Lewis and Clark County, petition for judicial review of a State Tax Appeal Board (STAB) hearing, concluding that the Petitioners' (Leahys') horse training operation was not run for profit. We affirm.

The following are issues on appeal:

1. Did the District Court err in failing to open the record and admit additional evidence?

2. Did the District Court err in failing to take judicial notice of various evidentiary "facts"?

3. Did the District Court err in affirming the STAB's conclusion that the Leahys' operation was not an activity engaged in for profit?

BACKGROUND

The Leahys live in Livingston, Montana, where Darlene has run a horse training operation. Dennis is an airline pilot for United Airlines. The Leahys were audited for tax years 1983 through 1987, and the Department of Revenue (DOR) determined that the horse training operation was not an activity engaged in for profit and therefore, the DOR disallowed certain business expenses that Leahys had claimed.

The DOR determination was appealed and a DOR hearing examiner conducted a hearing on June 29, 1989. The hearing examiner affirmed the DOR's assessment in his order, dated November 17, 1989. The parties then stipulated to waive the formal hearing and

2

proceeded directly to the STAB. A hearing before the STAB was held on July 24, 1991, and the STAB issued its Findings of Fact, Conclusions of Law, Order and Opportunity for Judicial Review on October 29, 1991, affirming the DOR's decision. The Leahys were represented at the STAB hearing by two nonlawyer CPAs but neither of the Leahys appeared or testified at the hearing. The Leahys filed their petition for judicial review of the STAB's order before the First Judicial District Court on December 26, 1991. The District Court filed its Order on Petition for Judicial Review on September 1, 1993, affirming the decision of the STAB. This appeal followed. Additional facts will be presented as necessary in the body of the opinion.

## STANDARD OF REVIEW

> When reviewing an administrative agency's findings of fact, this Court will defer to the agency's findings unless they are clearly erroneous. Findings of fact are clearly erroneous if they are not supported by substantial credible evidence. Steer, Inc. v. Department of Revenue (1990), 245 Mont. 470, 803 P.2d 601. Our standard for reviewing legal conclusions of an agency or a district court is simply to determine whether they are correct. Steer, 803 P.2d at 603.

Westmoreland Resources v. Department of Revenue (Mont. 1994), 868 P.2d 592, 596-597, 51 St.Rep. 67, 70. Interstate Production Credit v. DeSaye (1991), 250 Mont. 320, 820 P.2d 1285, expanded the definition of "clearly erroneous" discussed in Steer, and in doing so, developed a three-part test to determine if a finding was clearly erroneous. DeSaye, 820 P.2d at 1287. The first prong of the test, whether the findings are supported by substantial

3

credible evidence, is generally dispositive of whether a finding is clearly erroneous.

## 1. ADMISSION OF ADDITIONAL EVIDENCE

Did the District Court err in failing to open the record and admit additional evidence?

Leahys contend that they were misinformed about the reality of proceedings before the STAB and therefore, evidence which was vital to their case was excluded. They state that their nonlawyer representatives were not equipped to handle the objections made by the DOR to the evidence they proposed to be admitted. The Leahys claim these objections were sustained by the STAB and they were unfairly prevented from presenting their case. The DOR asserts that the Leahys were fully aware of the factual and legal elements necessary to prove their case and the Leahys should not be heard to complain. Moreover, the DOR states that the STAB admitted all the Leahys' testimony and evidence and the petitioners were represented by competent tax professionals.

Section 15-2-303(4), MCA (1991), now numbered § 15-2-303(5), MCA (1993), provides:

> (4) Notwithstanding the provisions of 2-4-704(1), the court may, for good cause shown, permit additional evidence to be introduced.

We discussed this subsection in O'Neill v. Department of Revenue (1987), 227 Mont. 226, 231, 739 P.2d 456, 459, and stated:

> Under Section 15-2-303(4), MCA, the court reviewing a STAB decision may, on its own initiative or upon motion of a party, find good cause and allow additional evidence to be introduced before the court. . . .

4

We find that the showing of good cause under Section 15-2-303(4), is permissive, not mandatory. Any legally sufficient reason meets the good cause requirement of Section 15-2-303(4), MCA, and such sufficiency lies within the discretion of the reviewing court. (Citations omitted.)

In the instant case, the District Court, in its order on Leahys' motion to add evidence, stated that "the primary reason asserted for presenting additional evidence is that Petitioners were not represented by counsel at the administrative hearing before STAB, and that this reason does not constitute good cause within the meaning of Section 15-2-303(4), MCA." Whether there is good cause to allow additional evidence to be introduced lies within the discretion of the reviewing court. O'Neill, 739 P.2d at 459. In this case, the District Court concluded there was not good cause to open the record to additional evidence. We agree.

The Findings of Fact, Interpretations of Law, Opinion and Order of the Department of Revenue Hearing Examiner, dated November 17, 1989, sets forth all issues which would be considered during the hearing before the STAB. Moreover, the Leahys had over eight months to prepare for the hearing before the STAB. The Leahys chose as their representatives two CPAs who were well-qualified and had a complete grasp of the issues which would be considered by the STAB during the hearing; Leahys could have hired counsel to represent them, had they chosen to do so. The Leahys had every opportunity to adequately prepare for the hearing and present their case before the STAB.

Although the Leahys contend that evidence they attempted to present during the STAB hearing was not admitted, a review of the

5

transcript shows that the evidence was admitted, albeit with objection. There is nothing in the record to indicate that all evidence submitted to the STAB during the hearing was not considered by the STAB in its deliberations. Again, the Leahys were given every opportunity to fully present their case.

The real problem at the hearing before the STAB was not with the admission of evidence but with the failure of the Leahys to appear and testify before the Board. Darlene was not available to provide testimony necessary to the Leahys' case. The District Court stated that the STAB was "clearly influenced by the fact that Petitioners failed to appear to testify in person and that Petitioners' representatives were not acquainted with Petitioners during the tax years in question." The District Court quoted the STAB:

> [f]acts and circumstances must indicate that an intent for profit must exist. Mrs. Leahy's credibility, motivation and sincerity are key matters in this determination. Yet she did not make herself available for questioning by this Board or by the Department of Revenue. Significantly, her absence prevented the Department of Revenue from corroborating details, seeking relevant information exclusively in the taxpayer's possession (memory, thoughts, experiences), or from discerning intent and credibility. All evidence and testimony regarding her intent is therefore indirect and/or hearsay. (Emphasis in original.)

The Leahys, themselves, failed to put forth the crucial evidence in their case--Darlene Leahy's testimony.

It is not the obligation of the administrative agency or of the District Court to second-guess litigants' decisions in their preparation for and presentation of their case before the agency. Furthermore, litigants are not entitled to reopen their case on

judicial review simply because, on 20/20 hindsight, they might have benefited from better preparation, different representation or an alternate theory or approach from that presented at the administrative hearing. The administrative hearing is not simply a "dry-run" for retrial in District Court on judicial review with more, better or different evidence.

The District Court determined there was not good cause to open the record and allow additional evidence under § 15-2-303(5), MCA (1993). In doing so, the District Court properly exercised its discretion. O'Neill, 739 P.2d at 459. We hold that the District Court did not err in denying the Leahys' motion to present additional evidence in support of their petition for judicial review.

## 2. JUDICIAL NOTICE

Did the District Court err in failing to take judicial notice of various evidentiary "facts"?

The Leahys contend that the District Court should have judicially noticed a number of "commonly known facts" during the proceedings. The DOR counters that the District Court properly refused to take judicial notice of these alleged facts because they are "subject to reasonable dispute." We agree with the DOR.

The following are the alleged facts of which Leahys requested the District Court to take judicial notice:

> The Court may take judicial notice that STAB's procedural rules are judicial in nature, even though informal and that STAB's procedural rules allow taxpayers to be formally represented at its hearing by persons who are not qualified to practice law, by persons who are not tested regarding their ability to understand the judicial

7

review process and by persons who may not understand the intricacies of the judicial review process.

This Court may take <u>judicial notice</u> that the Montana citizens are protected by the Montana Code and the Montana Constitution against persons who purport to practice law but are not qualified to do so.

As incorporated by the STAB opinion, the MDOR auditor did not believe the petitioner's 1987 medical injuries were significant, because she had not claimed any medical expense deductions and had no checks to show that she had sustained any significant medical expenses. Nevertheless, this Court can take <u>judicial notice</u> that most major corporations, such as the petitioner's husband's employer, United Air Lines, cover their employees and their families with medical insurance....

The Court [may] take <u>judicial notice</u> that the profitability of horse racing in the Helena area, in recent years, has been fragile at best and it was for this reason that the petitioner had become discouraged and fearful that her hard work might not become adequately rewarded.

STAB misperceived the petitioner's husband's role in helping her establish her horse business. [STAB Op. p.15] The petitioner's claimed deductions for interest expense indirectly explain the source of capital she was using to establish her business and this Court may take <u>judicial notice</u> that new business usually requires initial start-up capital; whether sourced by spouse's income or a bank loan.

As stated in petitioners' MEMORANDUM (OPENING) BRIEF, under I.R.C. § 183, horse breeders, horse racers, horse showers, and horse trainers are **presumed to be for profit**, if they have sustained a profit in any 2 out of 7 consecutive years. Petitioner started her horse training business in 1983. She was audited by the I.R.S. in her sixth and seventh year of business. Although fortuitous circumstances intervened to prevent Mrs. Leahy's horse training business from becoming profitable, the I.R.S. did not disallow her claimed losses, even though making other changes to her return for 1988 and 1989. Even without supplementing the record, this Court may take <u>judicial notice</u> that a conscientious IRS revenue [agent] would not have likely ignored raising a substantial hobby loss issue, while scrutinizing a taxpayer's return and raising other less significant adjustments.

In order for a fact to be judicially noticed, it must be "one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial

8

court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot be reasonably questioned." Rule 201(b), M.R.Evid.

The District Court, in its Order on Petition for Judicial Review, addressed the issue of judicial notice of facts:

> This Court, in an order dated January 27, 1993, denied Petitioners' motion to introduce new evidence into the record. In their briefs supporting the petition for judicial review, Petitioners attempt to bring in much of this same evidence by asking the Court to take judicial notice of various facts. . . .
> The Court declines to take judicial notice of the various facts asserted by Petitioners, as they are not facts that are generally known or capable of ready determination in any accurate sources, as required by the rules of evidence.

We agree with the District Court that the alleged facts sought to be judicially noticed are not facts which are "generally known" nor are they "capable of accurate and ready determination." Moreover, many of the facts are argumentative and/or require additional information to verify their truth. O'Neill, 739 P.2d at 460. For the most part, the alleged "facts" offered by Leahys amount to nothing more than their own conclusory statements on the evidence and the law. These are simply not the type of "facts" which can be judicially noticed. As we stated in Holtz v. Babcock (1964), 143 Mont. 341, 373, 390 P.2d 801, 802:

> [N]either this [C]ourt nor the district courts should be required to assume the burden of informing themselves under the doctrine of judicial notice of facts not within the actual knowledge of the court. We think in this area there is a difference between judicial knowledge and actual knowledge and that the burden resting upon a litigant to present his proof cannot be shifted to the court under the doctrine of judicial notice.

9

Therefore, we hold that the District Court did not err when it refused to take judicial notice of the alleged facts offered by the Leahys.

### 3. DISALLOWANCE OF CLAIMED LOSSES

Did the District Court err in affirming the STAB's conclusion that the Leahys' operation was not an activity engaged in for profit?

The Leahys argue that the STAB erred in concluding that their horse training operation was not an activity engaged in for profit and that the District Court erred in affirming the STAB. The DOR contends that the District Court correctly affirmed the STAB determination that the horse training operation was not engaged in for profit.

As stated above, the standard of review of an agency's or District Court's findings of fact is whether they are clearly erroneous; conclusions of law are reviewed to determine whether the law was applied correctly. Westmoreland, 868 P.2d at 596-597. Moreover, "[a] rebuttable presumption exists in favor of the agency decision." Hoven, Vervick & Amrine v. Montana Com'r of Labor (1989), 237 Mont. 525, 530, 774 P.2d 995, 998.

Initially, we determine the correct law to be applied to determine whether the Leahys' horse training operation is an activity engaged in for profit.

> The determination of a taxpayer's Montana income tax liability is primarily based upon the Federal Internal Revenue Code. . . .
> Montana has adopted the Federal Internal Revenue Code as the guide to be used to determine matters such as income and expense for computation of Montana income tax.

10

Magnuson v. Montana State Board of Equalization (1973), 162 Mont. 393, 395, 513 P.2d 1, 2.

Whether the Leahys' horse training operation was engaged in for profit is determined by application of Federal Internal Revenue Code (I.R.C.) § 183 and Treas. Reg. § 1.183-2. Section 183, I.R.C., provides:

> (a) GENERAL RULE. - In the case of an activity engaged in by an individual or an S corporation, if such activity is not engaged in for profit, no deduction attributable to such activity shall be allowed under this chapter except as provided in this section.
> (b) DEDUCTIONS ALLOWABLE. - In the case of an activity not engaged in for profit to which subsection (a) applies, there shall be allowed-
> (1) the deductions which would be allowable under this chapter for the taxable year without regard to whether or not such activity is engaged in for profit, and
> (2) a deduction equal to the amount of the deductions which would be allowable under this chapter for the taxable year only if such activity were engaged in for profit, but only to the extent that the gross income derived from such activity for the taxable year exceeds that deductions allowable by reason of paragraph (1).
> (c) ACTIVITY NOT ENGAGED IN FOR PROFIT DEFINED. - For purposes of this section, the term "activity not engaged in for profit" means any activity other than one with respect to which deductions are allowable for the taxable year under section 162 or under paragraph (1) or paragraph (2) of section 212.
> (d) PRESUMPTION - If the gross income derived from an activity for 3 or more of the taxable years in the period of 5 consecutive taxable years which ends with the taxable year exceeds the deductions attributable to such activity (determined without regard to whether or not such activity is engaged in for profit), then, unless the Secretary establishes to the contrary, such activity shall be presumed for purposes of this chapter for such taxable year to be an activity engaged in for profit. In the case of an activity which consists in major part of the breeding, training, showing, or racing of horses, the preceding sentence shall be applied by substituting "2" for "3" and "7" for "5".

11

"The issue of whether a taxpayer engages in an activity with the requisite intention of making a profit is one of fact to be resolved on the basis of all the surrounding facts and circumstances of the case and the burden of proving the requisite intention is on the petitioners." Golanty v. Commissioner (1979), 72 T.C. 411, 426. The surrounding facts and circumstances are evaluated using a nine element test developed primarily through case law and listed in Treas. Reg. 1.183-2(b). These nine elements include:

> (1) Manner in which the taxpayer carries on the activity.
> (2) The expertise of the taxpayer or his advisors.
> (3) The time and effort expended by the taxpayer in carrying on the activity.
> (4) Expectation that assets used in activity may appreciate in value.
> (5) The success of the taxpayer in carrying on other similar or dissimilar activities.
> (6) The taxpayer's history of income or losses with respect to the activity.
> (7) The amount of occasional profits, if any, which are earned.
> (8) The financial status of the taxpayer.
> (9) Elements of personal pleasure or recreation.

Treas. Reg. 1.183-2(b). "Although no one factor [element] is conclusive, a record of substantial losses over many years and the unlikelihood of achieving a profitable operation are important factors bearing on the taxpayer's true intention." A.E. and Brenda L. Boddy v. Commissioner (1984), 47 T.C. Memo 1381, 1386.

On judicial review, the District Court concluded that the STAB opinion properly addressed and considered the nine element test in determining that Leahys' horse training operation was not engaged

12

in for profit and that the STAB's findings of fact were not clearly erroneous and its conclusions of law were correct. We agree.

The first element which was considered by the STAB was the manner in which the taxpayers carried on the horse training activity. The STAB concluded that the Leahys did not keep adequate records and carry on the activity in a business-like manner. This assessment is supported by the record.

Darlene Leahy stated that before she moved to Montana, she worked part-time preparing income tax returns. However, her own records of the horse training operation were inadequate to verify many of her expenditures. The monthly accounts were not supported by documentary evidence such as cancelled checks or bills; many checks did not identify the purpose for the payment. Many of the checks for the operation were paid from Darlene's personal checking account, even though she had a "business" account. In short, the records maintained by Darlene were not of the quality one would expect from a person who had professional experience preparing income tax returns.

Treas. Reg. 1.274-5, requires maintaining adequate records and provides:

> (c) Rules for substantiation. (1) **In general.** A taxpayer must substantiate each element of an expenditure (described in paragraph (b) of this section) by adequate records or by sufficient evidence corroborating his own statement except as otherwise provided in this section.
> . . .
>
> (2) Substantiation by adequate records. (i) In general. To meet the 'adequate records' requirements of section 274(d), a taxpayer shall maintain an account book, diary, statement of expense or similar record (as

13

provided in subdivision (ii) of this subparagraph) and documentary evidence (as provided in subdivision (iii) of this subparagraph) which, in combination, are sufficient to establish each element of an expenditure specified in paragraph (b) of this section.
. . .

(iii) Documentary evidence. Documentary evidence, such as receipts, paid bills, or similar evidence sufficient to support an expenditure shall be required for . . .

(b) Any other expenditure of $25 or more...A document may be indicative of only one (or part of one) element of an expenditure. Thus, a cancelled check, together with a bill from the payee, ordinarily would establish the element of cost. In contrast, a cancelled check drawn payable to a named payee would not by itself support a business expenditure without other evidence showing that the check was used for a certain business purpose

The records maintained by Darlene regarding the horse training operation did not meet the standards set by Treas. Reg. 1.274-5.

Moreover, Darlene listed her occupation as "homemaker" during the years 1983 through 1985, instead of the occupation of horse trainer. She did not list any occupation during the years of 1986 and 1987 although she was still engaged in the horse training activity, albeit to a limited extent.

Additionally, the STAB opinion states that the following information was gleaned from the Leahys' tax records:

The enterprise in question during taxable years 1983-87 was identified as "Leahy Junction" on the 1983, 1985 and 1986 tax returns. It was not indicated for 1984 and was identified as "Leahy Junction Stables" for 1987. The "principal business or profession" of the concern was identified as "sales and service" on the 1983 and 1985 tax returns, was not identified for 1984, and identified as "training service" for 1986 and "services training" for 1987. No employer identification number or proprietor social security number was listed for tax years 1983, 1984 or 1987. Dennis Leahy's social security number was shown for the business for taxable years 1985

14

and 1986. No name of the proprietor of the business was shown on the Leahys' 1983, 1984, or 1987 returns. For 1985 and 1986, the proprietor was stated to be Dennis Leahy.

Thus, Leahys' tax returns demonstrate that the horse training activity was not treated consistently in a businesslike manner. The STAB and the District Court correctly determined that the Leahys did not satisfy the first element of the nine element test.

The second element considered by the STAB was the expertise of the taxpayer or her advisors. As part of her proof that she was an expert in the field of horse training, Darlene stated that she was licensed as a horse trainer in six states. Although Leahys' representatives at the STAB hearing stated that they had documentary evidence of her expertise in the form of copies of licenses from various states, no evidence of such licenses was offered or admitted for the STAB's review. Therefore, the STAB had no documentary evidence available to it to verify her claim and, accordingly, it correctly determined that this element was not satisfied.

The third element of the test reviewed by the STAB was the time and effort expended by the taxpayer in carrying on the horse training activity. Here, although the STAB determined that Darlene put a considerable amount of her time into training horses, it noted that she was not otherwise employed outside the home and that most people will, in any event, spend time and effort on a pursuit that they enjoy. Work with horses is an activity strongly identified as a recreational activity; Montana has a considerable number of "hobby farms" which facilitate the owner's enjoyment of

15

horses. Accordingly, the STAB concluded that the amount of time Darlene spent on horse training was of questionable merit in the case. We agree, noting that this is one instance in which testimony by Darlene about the element under consideration would have been of considerable assistance to both the petitioners and the STAB. Darlene, however, failed to testify at the hearing.

The fourth element the STAB considered had to do with the expectation that assets used in the activity may appreciate in value. The two assets discussed during the hearing were the property upon which Darlene conducted the horse training operation and a stallion she owned which she claimed to have purchased for $2,800. Darlene stated during the course of the audit, and the STAB noted, that the property upon which the horse training activity was conducted had declined in value from the time it was purchased in 1981.

Darlene produced a letter during the DOR audit stating that an equine appraiser found the fair market value of the stallion to be $20,000. However, there was no documentation as to the purchase of the stallion for $2,800. Even if the purchase price could be proven to be $2,800, the STAB correctly concluded that the appreciation of the one stallion was insufficient to offset the large annual losses from 1983 through 1987. See Boddy, 47 T.C. Memo at 1387. The Leahys did not demonstrate that the assets used in the horse training operation supported a claim that the activity was engaged in for profit.

The fifth element under consideration by the STAB evaluated the success of the taxpayer in carrying on similar or dissimilar activities. Again, although Darlene claimed she had been a successful horse trainer in six states before moving to Montana, there was no documentary evidence admitted to demonstrate that Darlene was licensed as a horse trainer in six states or that she had a successful career as a horse trainer prior to her move. Therefore, there was no concrete support for her contention that she had successfully made a profit in the horse training business in the past.

The sixth element considered by the STAB was a review of the history of income or losses with respect to the horse training activity. The Leahys' operation lost substantial amounts of money for each of the years 1983 through 1987. In 1983, the Leahys claimed a loss of $36,746 from the horse training operation. The following were the losses for the years 1984, 1985, 1986, and 1987, respectively: $38,448; $40,552; $49,993; and $48,212.

The STAB noted that Darlene sustained a serious head injury in 1986 which curtailed her horse training activities in 1986 and 1987 and led her to refer clients to other trainers. However, the STAB found that her losses in 1986 and 1987 remained high, $49,993 and $48,212 respectively. Despite curtailing her horse training activities for the two years in question, there was no corresponding or discernible decrease in expenses of operation. The STAB found that the horse training operation had a "nurse cow" income from other sources which enabled it to survive, and that the

17

operation was measurably supported by Dennis' salary as a pilot. The STAB, therefore, properly concluded that the petitioners did not satisfy this element of the test either.

As to the seventh element of the test, the STAB considered the amount of occasional profits, if any, which were earned from the horse training operation. It found that "no profit ha[d] been shown in 1983 through 1987...." This statement is supported by the evidence and again, the STAB correctly concluded that the Leahys did not satisfy this element. See Joseph T. Tripi and Miriam V. Tripi v. Commissioner (1983), 46 T.C. Memo 1094, 1101.

The eighth element evaluated by the STAB was the financial status of the taxpayers. The comments to Treas. Reg. 1.183.2(8) state that:

> The fact that the taxpayer does not have substantial income or capital from sources other than the activity may indicate that an activity is engaged in for profit. Substantial income from sources other than the activity (particularly if the losses from the activity generate substantial tax benefits) may indicate that the activity is not engaged in for profit especially if there are personal or recreational elements involved.

26 C.F.R. § 1.183-2(8) The STAB noted, for example, that Dennis' salary for 1987 was over $84,000 and yet the Leahys paid no income tax. It further concluded that the horse training operation's losses shielded Dennis' salary from taxation. A review of the tax returns for the Leahys in the tax years at issue demonstrate that the Leahys paid no or minimal tax for the years in question even though Dennis' wages were substantial.

The STAB found that Dennis' salary ranged from $67,000 to $87,000 during the years in question. The STAB concluded that

18

"[h]is salary must have been used to subsidize the horse training activities since this entity couldn't sustain itself through its own gross income." The evidence supports the STAB's conclusion and indicates an intent that the horse training activity was not engaged in for a profit. See Boddy, 47 T.C. Memo at 1388.

The final element involves the presence of personal or recreational motives in carrying out the activity--"[t]he presence of personal motives in carrying on of an activity may indicate that the activity is not engaged in for profit, especially where there are recreational or personal elements involved." Horse training, breeding and racing are activities traditionally associated with recreation and personal pleasure.

The STAB noted in its opinion, however, that Darlene stated that she derived no pleasure from the horse training operation but would continue to work at it until the operation could be sold. Even if the Leahys could demonstrate there is not a personal motive or recreational aspect for their operation of the horse training activity, this fact alone does not counterbalance the failure of proof on the other elements of the test. See Golanty, 72 T.C. at 430.

The STAB's conclusion that the horse training operation conducted by the Leahys was not an activity engaged in for profit is not clearly erroneous, and the STAB's interpretation of the law as it applies to the instant case is correct. Moreover, the District Court correctly affirmed the STAB in its findings and conclusions.

19

We affirm the District Court.

_____
                        Justice

We concur:

_____
_____
_____
_____
                        Justices


20

August 4, 1994

## CERTIFICATE OF SERVICE

I hereby certify that the following certified order was sent by United States mail, prepaid, to the following named:


Thomas C. Morrison
Attorney at Law
111 N. Last Chance Gulch, Ste. 3J
Helena, MT 59601-4144

Paul Van Tricht, Tax Counsel
Dept. of Revenue
P.O. Box 202701
Helena, MT 59620-2701

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY: _____
Deputy