**SHAMROCK MOTORS, INC.,**
**Plaintiff–Appellee,**

**v.**

**FORD MOTOR COMPANY,**
**Defendant–Appellant.**

No. 96–35124.

United States Court of Appeals,
Ninth Circuit.

Submitted July 10, 1997.*

Decided July 28, 1997.

Michael J. O'Reilly, Ford Motor Company, Dearborn, MI, for Defendant–Appellant.

James T. Harrison, Jr., Harrison Loendorf & Poston, Helena, MT, for Plaintiff–Appellee.

---

* The panel finds this case appropriate for submission without oral argument pursuant to 9th Cir.

R. 34–4 and Fed. R.App. P. 34(a).

Before: REAVLEY,** O'SCANNLAIN, and FERNANDEZ, Circuit Judges.

FERNANDEZ, Circuit Judge:

Ford Motor Company appeals from the United States District Court's determination that it improperly terminated its dealer franchise agreement with Shamrock Motors, Inc. The case had been removed to the district court from the State of Montana District Court for the Second Judicial District, Silver Bow County. However, because the state court proceeding was an appellate review of an administrative proceeding, the district court did not have jurisdiction. Therefore, we vacate and remand.

## BACKGROUND

Ford sought to terminate the automobile dealer franchise agreement which it had with Shamrock because the owners of Shamrock had purported to transfer control of its business to another person, without obtaining Ford's consent. The franchise agreement provided that Shamrock's shareholders were to be Patrick E. Lyons and Charles R. Canty and that Lyons was to have full managerial control over the business. It also provided that:

> The Dealer [Shamrock] shall give the Company [Ford] required notice of any proposed change in said ownership or management authority.... No such change ... and no assignment of this agreement or of any right or interest herein, shall be effective against the company unless and until embodied in an agreement.... The Company shall not unreasonably withhold its consent to any such change.

The agreement went on to provide that:

> The following represent events which are substantially within the control of the Dealer and over which the Company has no control and which are so contrary to the intent and purpose of this Agreement as to warrant its termination or nonrenewal:

> (1) Any transfer or attempt to transfer by the Dealer of any interest in, or right, privilege, or obligation under this Agreement ... without the Company's prior written consent.

Despite these provisions, the corporation's owners did transfer eighty percent of their interest in Shamrock to another person without even informing Ford, much less obtaining its consent. Ford then sought to terminate the agreement and gave the notice of intent to do so which is required by Montana law. *See* Mont.Code Ann. § 61–4–205(3).

Shamrock objected to the termination, and an administrative proceeding was commenced by the State of Montana Department of Justice Motor Vehicle Division. *See* Mont. Code § 61–4–206. The department held in favor of Ford, and, pursuant to the Montana Administrative Procedure Act, Shamrock sought review in the State of Montana District Court for the Montana Second Judicial District, Silver Bow County. *See* Mont.Code Ann. §§ 2–4–701—2–4–711, 61–4–206(8).

Ford then removed the review action to the United States District Court on the basis of diversity of citizenship. *See* 28 U.S.C. §§ 1441(a), 1332. That court reversed the decision of the Montana Department of Justice and rendered judgment in favor of Shamrock. This appeal ensued.

## DISCUSSION

■ At the threshold, we observed a jurisdictional difficulty, that is, did the district court have subject matter jurisdiction to review the decision of the Montana Department of Justice? We, therefore, raised the issue sua sponte as we were required to do. *See WMX Technologies, Inc. v. Miller,* 104 F.3d 1133, 1135 (9th Cir.1997) (en banc). We have considered the question de novo, *see Intercontinental Travel Mktg. v. FDIC,* 45 F.3d 1278, 1282 (9th Cir.1994), and have determined that there was no jurisdiction. We will explain.

■ Review of state administrative decisions by the Montana state courts is in the

---

** Honorable Thomas M. Reavley, Senior United States Circuit Judge for the Fifth Circuit, sitting

by designation.

nature of appellate review rather than trial or de novo review. That review is "without a jury" and is "confined to the record." *See* Mont.Code Ann. § 2–4–704(1). Moreover, the reviewing court is not to substitute its judgment regarding the "weight of the evidence" for that of the administrative agency and, essentially, may only reverse if the agency's determination was clearly erroneous, an error of law, or "arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion." Mont.Code Ann. § 2–4–704(2); *see Thornton v. Commissioner,* 190 Mont. 442, 621 P.2d 1062, 1064–65 (1981). In fact, even in the extraordinary event that the court is informed of the discovery of additional evidence which for "good reasons" was not presented to the agency, the court may not hear that evidence and decide the case. Mont. Code Ann. § 2–4–703. Rather, the court is required to return the case to the agency so that it can hear that evidence and then "modify its findings and decision" if it deems that appropriate. *Id.* Finally, although courts will review the agency's legal conclusions to assure that they are correct, *see Leahy v. Department of Revenue,* 266 Mont. 94, 879 P.2d 653, 655 (1994), if a statute administered by the agency is ambiguous, the court will defer to the agency's interpretation. *See Helena Aerie No. 16 v. Montana Dep't of Revenue,* 251 Mont. 77, 822 P.2d 1057, 1060 (1991); *Montana Tavern Ass'n v. State,* 224 Mont. 258, 729 P.2d 1310, 1316 (1986).

While we have not had occasion to confront the precise issue subtended by the Montana statutory review scheme, we have alluded to that issue. *See Shell Oil Co. v. Train,* 585 F.2d 408, 414–15 (9th Cir.1978). In *Shell Oil,* we considered an action brought against the Federal Environmental Protection Agency. That action had been dismissed by the district court because a state administrative agency, rather than the federal one, had made the decision in question. *See id.* at 409. We noted that federal courts were not the "sole avenue" of review of a state's administrative decisions where, as there, "[j]urisdiction to review ... is specifically conferred on the state's courts of general jurisdiction." *Id.* at 414. As we explained, "[p]roper respect for both the integ-

rity and independence of the state administrative mechanism, mandated by Congress, in this context, required that Shell's complaint be dismissed." *Id.* at 414–15; *see also Aminoil U.S.A., Inc. v. California State Water Resources Control Bd.,* 674 F.2d 1227, 1232–33 (9th Cir.1982). While the decision is evocative of the rule which must control this case, it is not directly in point either substantively or procedurally. Thus, we must look further and deeper.

In doing so, we need not penetrate some trackless forest because the Supreme Court, and other circuits, have blazed the trail for us. In *Chicago, R.I. & P.R. Co. v. Stude,* 346 U.S. 574, 575–77, 74 S.Ct. 290, 292–93, 98 L.Ed. 317 (1954), the plaintiff sought to obtain review of an administrative proceeding by filing a diversity action directly in the United States District Court, even though state law provided for administrative appeal to the State of Iowa District Court. The plaintiff also filed a review proceeding in the State of Iowa District Court and then removed that action, in which it was designated as a defendant, to the United States District Court. *See id.* As to the action for direct review, the Supreme Court said:

> The petitioner, after giving notice of appeal ... could not perfect that appeal to any court but the court which the statute of Iowa directed, which was the District Court of that State for the County of Pottawattamie. The United States District Court for the Southern District of Iowa does not sit to review on appeal action taken administratively or judicially in a state proceeding. A state "legislature may not make a federal district court, a court of original jurisdiction, into an appellate tribunal or otherwise expand its jurisdiction...."

*Id.* at 581, 74 S.Ct. at 295 (quoting *Burford v. Sun Oil Co.,* 319 U.S. 315, 317, 63 S.Ct. 1098, 1099, 87 L.Ed. 1424 (1943)).

However, the removed action was one in which the state court was authorized to conduct de novo review, and, the Court suggested, removal would have been proper had the removing party truly been the defendant. *See id.* at 578–80, 74 S.Ct. at 293–94. Thus,

the Court introduced the distinction between appellate administrative review and de novo administrative review.

The Court returned to that theme in *Horton v. Liberty Mut. Ins. Co.*, 367 U.S. 348, 81 S.Ct. 1570, 6 L.Ed.2d 890 (1961). There the Texas Industrial Accident Board had issued a workers compensation award to Horton. The insurance company was dissatisfied with the award, so it brought a diversity action in the district court for the purpose of obtaining review of the decision. *See id.* at 349, 81 S.Ct. at 1571. Horton claimed that the district court did not have jurisdiction because "the suit filed by the company is nothing more than an appeal from a state administrative order, [and] ... a Federal District Court has no appellate jurisdiction." *Id.* at 354, 81 S.Ct. at 1574. The Court disagreed, but did so because " '[t]he suit to set aside an award of the board is in fact a suit, not an appeal.' " *Id.* (citation omitted). In light of the fact that the action required a trial de novo, rather than a true appellate review, the district court did have diversity jurisdiction. *See id.* at 355, 81 S.Ct. at 1574.

The courts of appeals that have considered the point have applied that framework, and when review of an administrative decision was sought, they have analyzed the type of review provided for by the state in question. The Seventh Circuit has trenchantly summed up the law in this area:

> [I]n determining whether a state action seeking judicial review of a state administrative agency's decision is removable, the focus must be upon the character of the state proceeding and upon the nature of the review conducted by the state court. If the state administrative review process provides for a trial de novo, removal of the action to federal court does not require the district court to perform an appellate function that is inconsistent with the character of a court of original jurisdiction. Under those circumstances, the state proceeding can be termed a "civil action." If, however, the state administrative review process requires the state court to proceed on the basis of a more deferential review of the

state agency's findings and determinations, removal of the action to federal court would require the district court to perform an appellate role with respect to the decision of the state administrative agency. The district court would not be performing a function that could be described as a "civil action" within its original jurisdiction and, accordingly, the requirements of 28 U.S.C. § 1441(a) would not be fulfilled.

*International College of Surgeons v. City of Chicago*, 91 F.3d 981, 990 (7th Cir.1996), *cert. granted*, —— U.S. ——, 117 S.Ct. 1424, 137 L.Ed.2d 534 (1997).[1] The court, therefore, determined that it was improper to permit removal of an administrative review action where review was limited to the evidence developed in the agency proceeding, and the agency's findings were prima facie correct. *Id.* at 991. That, said the court, was sufficient to show that the review "is an appellate proceeding and, as such, it is not a 'civil action ... of which the district courts ... have original jurisdiction' within the meaning of 28 U.S.C. § 1441(a)." *Id.* at 992.

Other circuits have reached the same conclusion. Thus, when faced with "a review procedure under which factual findings are conclusive unless found to be fraudulent, arbitrary or capricious or so grossly erroneous as to imply bad faith," the Fourth Circuit said that could not "be fairly characterized as a *de novo* trial." *Fairfax County Redev. & Housing Auth. v. W.M. Schlosser Co., Inc.*, 64 F.3d 155, 158 (4th Cir.1995). As a result, it held, the district court was without jurisdiction to review an administrative agency determination, and should have remanded when a disappointed party removed the state review proceeding to the United States District Court. *See id.* at 156; *see also Labiche v. Louisiana Patients' Comp. Fund Oversight Bd.*, 69 F.3d 21, 22 (5th Cir.1995); *FSK Drug Corp. v. Perales*, 960 F.2d 6, 11 (2d Cir.1992); *Trapp v. Goetz*, 373 F.2d 380, 382–83 (10th Cir.1966). The only circuit that might take a contrary view is the Eighth. *See Range Oil Supply Co. v. Chicago, Rock Island & Pac. R.R. Co.*, 248 F.2d 477 (8th Cir.1957). But it is far from clear that

---

**1.** It appears that certiorari was granted because the administrative review claim was mixed with federal law claims. *See* —— U.S. ——, 117 S.Ct. 1424, 137 L.Ed.2d 534 (1997).

*Range Oil* dealt with appellate review rather than de novo review. While the administrative record was relied on, that was by stipulation of counsel. *See id.* at 478. Moreover, the review statute in question appears to have provided a hybrid procedure which was more like trial review than appellate review. *See* Minn.Stat. Ann. § 216.25 (1957) (appeal *tried* according to rules relating to civil actions and burden of persuasion on party appealing, but administrative findings prima facie correct.)

We agree with the other circuits. Appellate administrative review is very little like a civil action in the usual sense. Furthermore, the prospect of a federal court sitting as an appellate court over state administrative proceedings is rather jarring and should not be quickly embraced as a matter of policy. That is not to say that Congress could not place federal district courts in the position of reviewing state administrative or court decisions in certain instances. But even when Congress has done so for important reasons of federalism, the unique problems thereby created and the unique procedures we have had to devise to deal with those problems militate against considering those to be civil actions in the usual sense. *See, e.g., RTC v. Bayside Developers,* 43 F.3d 1230, 1237–38 (9th Cir.1994); *RTC v. BVS Dev., Inc.,* 42 F.3d 1206, 1210–11 (9th Cir.1994).

When these principles are applied to this case, it becomes abundantly clear that the district court erred when it reversed the decision of the Montana Department of Justice. The Montana administrative review procedure is clearly of an appellate nature; it is about as far from de novo trial review as one could imagine. In a sense, the district court implicitly recognized that when it issued its decision. It did not simply issue a judgment in favor of Shamrock. What it did, instead, was order that "the final decision of the Department of Justice is, accordingly, REVERSED." In so doing, the district court acted as an appellate tribunal and exceeded its jurisdiction.

## CONCLUSION

When a state provides for administrative agency review of an appellate nature, rather than administrative review of a de novo nature, federal district courts have neither original jurisdiction nor removal jurisdiction over the review proceedings.

Under Montana law, administrative review of Montana Department of Justice Motor Vehicle Division decisions is appellate in nature. Therefore, the district court should not have assumed jurisdiction, but should have, instead, remanded the removed action to the state court. We, therefore, vacate the judgment and remand to the district court for further remand by it to the state court.

VACATED AND REMANDED.