**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

BNSF Railway Company, a
Delaware corporation,
          *Plaintiff-Appellant,*

              v.

Matt O'Dea,
          *Defendant-Appellee.*

No. 08-35075

D. C. No.
CV-07-00137-CSO

OPINION

Appeal from the United States District Court
for the District of Montana
Carolyn S. Ostby, Magistrate Judge, Presiding

Argued and Submitted
June 1, 2009—Portland, Oregon

Filed July 16, 2009

Before: Diarmuid F. O'Scannlain, Ferdinand F. Fernandez,
and Raymond C. Fisher, Circuit Judges.

Opinion by Judge Fernandez;
Concurrence by Judge Fisher

9111

## COUNSEL

Bryan P. Neal and Stephen F. Fink, Thompson & Knight L.L.P., Dallas, Texas, for the plaintiff-appellant.

Terry N. Trieweiler, Trieweiler Law, Whitefish, Montana, for the defendant-appellee.

**OPINION**

FERNANDEZ, Circuit Judge:

BNSF Railway Company appeals the district court's dismissal of its action against Matt O'Dea. The district court held that it did not have jurisdiction because the action, in effect, sought appellate review of a decision of the Montana Human Rights Commission. We determine that the district court did have jurisdiction; we reverse and remand.

## BACKGROUND

BNSF is a Delaware corporation, and has its principal place of business in Texas. O'Dea is a citizen of Montana.

O'Dea applied to and was extended a conditional offer of employment by BNSF for the position of Conductor Trainee. Based upon an individualized medical assessment, however, BNSF disqualified O'Dea from further consideration for the position. O'Dea then filed a complaint for discrimination with the Montana Department of Labor and Industry, Employment Relations Division, alleging that BNSF had discriminated against him because of the perceived disability of obesity in violation of the Montana Human Rights Act, the Americans with Disabilities Act of 1990, and Title VII of the Civil Rights Act of 1964. A hearing examiner granted O'Dea's motion for a summary ruling on liability and issued a final decision awarding him damages and other relief. The Montana Human Rights Commission affirmed that decision.

The Montana Administrative Procedure Act[1] provides for judicial review of agency decisions, and BNSF sought review by filing this action based upon diversity jurisdiction. *See* 28 U.S.C. § 1332. O'Dea filed a motion to dismiss the action and argued that the federal courts lack subject matter jurisdiction

---

[1]Mont. Code Ann. §§ 2-4-701 through 2-4-711.

because federal courts do not have diversity jurisdiction over appeals from state agencies, and that is what this action amounts to.[2] The district court agreed, and dismissed the action. This appeal followed.

## STANDARD OF REVIEW

We review the district court's dismissal of this case for lack of subject matter jurisdiction de novo. *See Nuclear Info. & Res. Serv. v. U.S. Dep't of Transp. Research & Special Programs Admin.*, 457 F.3d 956, 958 (9th Cir. 2006).

## JURISDICTION

This appeal wholly turns on questions of jurisdiction. The primary question is whether a district court can entertain a diversity action to review a decision of a state administrative agency where that review is of an on-the-record, rather than de novo, nature. In a case virtually on all fours with the case at hand, we held that federal courts do not have jurisdiction to review decisions of Montana administrative agencies under those circumstances. *See Shamrock Motors, Inc. v. Ford Motor Co.*, 120 F.3d 196, 197-200 (9th Cir. 1997).

O'Dea argues that we are bound by *Shamrock* and must, therefore, affirm the district court. Were his premise correct, we would have to agree. Alas, as we will hereafter explain, it is not. But first we must make a brief detour to answer O'Dea's claim that we do not have appellate jurisdiction in any event.

A. *Appellate Jurisdiction*

We do have jurisdiction to determine whether we have

---

[2]O'Dea also argued that BNSF failed to join indispensable parties, that venue was improper and that service of process was insufficient. The district court did not rule on those assertions. Nor shall we.

jurisdiction over this appeal. *See Aguon-Schulte v. Guam Election Comm'n*, 469 F.3d 1236, 1239 (9th Cir. 2006).

When BNSF filed this action in the district court, it also, out of an abundance of caution, filed a parallel action in a Montana state court, in which it sought review of the Human Rights Commission decision. It then removed that action to the district court. The district court remanded that action to the state courts for essentially the same reason as it dismissed this action. We, of course, do not have jurisdiction to review that remand. *See* 28 U.S.C. § 1447(c), (d); *Aguon-Schulte*, 469 F.3d at 1240.

O'Dea argues that this appeal is really an appeal from a remand order. Clearly, it is not; it is an appeal from the dismissal of an original action filed in the district court. While we agree with O'Dea that courts should be more concerned with substance than with labels,[3] the fact that this was an original federal court action is no mere label; it is a concrete fact. Thus, the strictures of 28 U.S.C. § 1447 do not apply to it.

[1] But, says O'Dea, BNSF could not file an original action in the district court because the appeal procedure set forth in Montana law declares that a petition for review "must be filed in the [state] district court for the county where the petitioner resides or has the petitioner's principal place of business or where the agency maintains its principal office." Mont. Code Ann. § 2-4-702(2)(a). That means, says he, that original federal jurisdiction is precluded.[4] We disagree. A state cannot

---

[3]*See Prudential Real Estate Affiliates, Inc. v. PPR Realty, Inc.*, 204 F.3d 867, 880 (9th Cir. 2000).

[4]O'Dea suggests that BNSF cannot even contest his claim because in another case it (unsuccessfully) judicially admitted that a filing must first be made in the state court. However, assuming that BNSF made that admission, we are unaware of any rule that would deprive us of jurisdiction in this case because of it. *See, e.g.*, *Heritage Bank v. Redcom Labs., Inc.*, 250 F.3d 319, 329 (5th Cir. 2001) (holding that judicial admissions

confer rights upon private parties and require that litigation between those parties must be confined to the courts of the state itself. As our hyaline alembic regarding this part of the law put it more than twenty-five years ago, when we were faced with an assertion that state statutes precluded federal court jurisdiction:

> In determining jurisdiction, district courts of the United States must look to the sources of their power, Article III of the United States Constitution and Congressional statutory grants of jurisdiction, not to the acts of state legislatures. However extensive their power to create and define substantive rights, the states have no power directly to enlarge or contract federal jurisdiction.

*Duchek v. Jacobi*, 646 F.2d 415, 419 (9th Cir. 1981); *see also Marshall v. Marshall*, 547 U.S. 293, 312-14, 126 S. Ct. 1735, 1749-50, 164 L. Ed. 2d 480 (2006); *Ry. Co. v. Whitton's Adm'r*, 80 U.S. (13 Wall.) 270, 286, 20 L. Ed. 571 (1871); *Begay v. Kerr-McGee Corp.*, 682 F.2d 1311, 1315 (9th Cir. 1982).

We recognize, of course, that in *Chicago, R.I. & P.R. Co. v. Stude*, 346 U.S. 574, 581, 74 S. Ct. 290, 295, 98 L. Ed. 317 (1954), the Supreme Court found a lack of jurisdiction. The railroad attempted to file an appeal in the district court from a state administrative ruling in a condemnation case before the condemnation proceedings were complete. *Id.* at 575-77, 74 S. Ct. at 292-93. State law did provide for an appeal to a

in an action do not extend to other actions); *Int'l Tel. & Tel. Corp. v. Gen. Tel. & Elecs. Corp.*, 518 F.2d 913, 932 n.71 (9th Cir. 1975) (same), *disapproved on other ground by California v. Am. Stores Co.*, 495 U.S. 271, 277-78, 110 S. Ct. 1853, 1857, 109 L. Ed. 2d 240 (1990); *cf. Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778, 782-83 (9th Cir. 2001) (stating that failure to gain an advantage in prior litigation cuts against a finding of judicial estoppel).

state court, and the Supreme Court determined that the federal district court should not be a part of that purely state procedure. As it said, state legislatures cannot " 'make a federal district court, a court of original jurisdiction, into an appellate tribunal.' " *Id.* at 581, 74 S. Ct. at 295. We quoted that very passage in *Shamrock*, 120 F.3d at 198, as an important step to our conclusion that diversity jurisdiction was not proper. However, the Court has now indicated that *Stude* was actually referring to a state procedure that was merely an interlocutory step in a condemnation action[5] and has gone on to observe that, in principle, on-the-record review of administrative actions by a district court is perfectly proper.[6] That, and the cases just cited, leave the residual conclusion that state legislatures cannot directly affect federal court jurisdiction. The authorities stand for no more and no less than that.

**[2]** Nor do we scry anything in the Montana statute itself that would lead us to the belief that the state even contemplated, intended, or attempted to affect federal jurisdiction. We conclude that it did not and could not have succeeded if it had.

## B.  *Diversity Jurisdiction*

We come, then, to the principal question raised by the parties: Is there federal diversity jurisdiction?

**[3]** As we have already noted, here, as in *Shamrock*, we deal with the strictures on review of the decisions of Montana administrative agency adjudications. Under Montana law "[t]he review must be conducted by the court without a jury and must be confined to the record." Mont. Code Ann. § 2-4-704(1). Moreover, "[t]he court may not substitute its judgment for that of the agency as to the weight of the evidence

---

[5]*City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 169-70, 118 S. Ct. 523, 532, 139 L. Ed. 2d 525 (1997).

[6]*Id.* at 170-71, 118 S. Ct. at 532-33.

on questions of fact,"⁷ and even if the court believes that additional evidence is needed, it cannot take that evidence itself, but must remand to the agency for that purpose.⁸

[4] In light of those provisions and our reading of the paths of the law blazed by the United States Supreme Court, we determined in *Shamrock* that the review in question was of an appellate nature, and "[w]hen a state provides for administrative agency review of an appellate nature, rather than administrative review of a de novo nature, federal district courts have neither original jurisdiction nor removal jurisdiction over the review proceedings." *Shamrock*, 120 F.3d at 200. In so doing, we relied on *Stude*. As we understood that case, the Supreme Court had determined that a state legislature could not turn a district court into an appellate tribunal for state administrative or judicial actions, but had the case been otherwise proper for removal, the district court could have taken jurisdiction because review was de novo. *Shamrock*, 120 F.3d at 198-99. We then went on to consider *Horton v. Liberty Mut. Ins. Co.*, 367 U.S. 348, 81 S. Ct. 1570, 6 L. Ed. 2d 890 (1961), and read that case to hold that review of the administrative agency determination was proper because, and only because, "the action required a trial de novo, rather than a true appellate review." *Shamrock*, 120 F.3d at 199. We thought that was why the Court had held that "the district court did have diversity jurisdiction." *Id.* We then referred to the fact that many other courts of appeals had taken the same view, and quoted, with approval, a Seventh Circuit Court of Appeals case⁹ which drew that distinction. *Shamrock*, 120 F.3d at 199.

[5] All of that led to our holding, but the Supreme Court has now made it pellucid that we were just plain wrong. In *City of Chicago*, 522 U.S. at 169-72, 118 S. Ct. at 532-533,

---

⁷Mont. Code Ann. § 2-4-704(2).

⁸Mont. Code Ann. § 2-4-703.

⁹*Int'l Coll. of Surgeons v. City of Chicago*, 91 F.3d 981, 990 (7th Cir. 1996), *rev'd*, 522 U.S. 156, 118 S. Ct. 523, 139 L. Ed. 2d 525 (1997).

the Court reversed the Seventh Circuit Court of Appeals decision that we dubbed trenchant, and thoroughly dismantled its (and our) reading of *Stude* and *Horton*. Moreover, in its discussion, the Court made it plain that there is nothing special about on-the-record review; rather, it said, "[a]fter all, district courts routinely conduct deferential review pursuant to their original jurisdiction over federal questions, including on-the-record review of federal administrative action." *Id.* at 171, 118 S. Ct. at 533. It then noted that "[n]othing in § 1367(a) suggests that district courts are without supplemental jurisdiction over claims seeking precisely the same brand of review of local administrative determinations." *Id.* As we see it, that left little or nothing to prop up *Shamrock*'s holding.

We do recognize that, like the case at hand, our prior case was a diversity case,[10] and the Supreme Court made it clear that it was dealing with federal question supplemental jurisdiction.[11] In fact, the Court stated that it was deciding a "supplemental" jurisdiction case under § 1367(a), and that "does not answer the question, nor do we, whether those same claims, if brought alone, would substantiate the district courts' 'original' jurisdiction over diversity cases under § 1332." *City of Chicago*, 522 U.S. at 172, 118 S. Ct. at 533.

**[6]** While we cannot fault the Court for limiting itself to the very case it had at hand, the fact remains that it is difficult to see a principled distinction between federal question jurisdiction under 28 U.S.C. § 1331, which is limited to "civil actions," and diversity jurisdiction under 28 U.S.C. § 1332, which has the self-same limitation.[12] In other words, once it is determined that district courts have full authority to con-

---

[10]*Shamrock*, 120 F.3d at 197.

[11]*City of Chicago*, 522 U.S. at 172, 118 S. Ct. at 533.

[12]As the Court has told us: "It is implausible, however, to say that the identical phrase means one thing . . . in § 1331 and something else . . . in § 1332." *Exxon Mobile Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 561, 125 S. Ct. 2611, 2622, 162 L. Ed. 2d 502 (2005).

sider on-the-record administrative review to be a "civil action" as such, there is no apparent basis to hold, as did *Shamrock*, that there is no district court diversity jurisdiction over that kind of civil action.[13]

Justice Ginsburg saw the above clearly. She saw that under the Court's reasoning, *Shamrock* must fall[14] because, as she succinctly put it:

> If, as the Court reasons today, the distinction between *de novo* and deferential review is inconsequential, then the district court may, indeed must, entertain cross-system, on-the-record appeals from local agency decisions—without regard to the presence or absence of any federal question—whenever the parties meet the diversity-of-citizenship requirement of § 1332.

*City of Chicago*, 522 U.S. at 182, 118 S. Ct. at 538 (Ginsburg, J., dissenting).

**[7]** Therefore, although the Supreme Court did not decide the identical issue in *Shamrock*, or expressly overrule that case, its decision in *City of Chicago* so thoroughly undermined the basis of our decision that we are constrained to say we are "bound by the intervening higher authority" of that Court and must "reject the prior opinion of this court [(*Shamrock*)] as having been effectively overruled." *Miller v. Gammie*, 335 F.3d 889, 900 (9th Cir. 2003) (en banc); *see also Cal. Dep't of Water Res. v. Powerex Corp.*, 533 F.3d 1087, 1095-96 (9th Cir. 2008). The ineluctable result is that even though this case involves on-the-record review of a Montana

---

[13]In fact, in *Stude*, 347 U.S. at 578-79, 74 S. Ct. at 294, the Court recognized that, at least after filing, an appeal became a civil action.

[14]*City of Chicago*, 522 U.S. at 178-79, 118 S. Ct. at 536 (Ginsburg, J., dissenting).

administrative agency decision, the district court has diversity jurisdiction.[15]

### CONCLUSION

In *City of Chicago*, 522 U.S. at 163, 118 S. Ct. at 528-29, the Supreme Court so severely undermined the rampart we erected between district court diversity jurisdiction and the onslaught of actions seeking on-the-record review of state administrative agency decisions that the structure's collapse was inevitable. That collapse has come. We are, therefore, constrained to hold that *Shamrock*, 120 F.3d at 200, is no longer the law and that the district court does have subject matter jurisdiction to hear BNSF's review action.

REVERSED and REMANDED.

---

FISHER, J., Circuit Judge, concurring:

Today we hold that district courts have diversity jurisdiction over appeals from state administrative agency decisions when state law places such appeals in state trial courts and, of course, when the familiar citizenship and amount in controversy requirements are fulfilled. Our holding will necessarily require federal courts of original jurisdiction to sit in an appellate capacity to deferentially review state administrative action. These cross-system appeals have been foreclosed from district court dockets for nearly 12 years under *Shamrock Motors, Inc. v. Ford Motor Co.*, 120 F.3d 196 (9th Cir. 1997), in part because we thought cross-system appeals were bad policy on the basis of well settled principles of federalism.

---

[15]We, like the Supreme Court, note the possibility that on remand an abstention principle might be applied by the district court, *see City of Chicago*, 522 U.S. at 174, 118 S. Ct. at 534; *see also id.* at 188-89, 118 S. Ct. at 541 (Ginsburg, J., dissenting).

*See id.* at 200. Although it is a close call, I join my colleagues, both of whom participated in deciding *Shamrock*, in holding that *City of Chicago v. International College of Surgeons*, 522 U.S. 156 (1997), "effectively overruled" *Shamrock*. *See Miller v. Gammie*, 335 F.3d 889, 900 (9th Cir. 2003) (en banc). It is a close call both because the *City of Chicago* majority explicitly stated that it was not deciding the question we decide today and because *City of Chicago*'s reading of the jurisdictional statutes did nothing to undermine the principles of federalism Judge Fernandez articulated in *Shamrock*. If anything, *City of Chicago* reinforced those policy concerns. I am therefore not convinced, as my colleagues are, that *Shamrock* was "just plain wrong," Op. at 9119. I write separately to explain why.

In *Shamrock*, we joined the majority of circuits in holding that district courts lack original jurisdiction over cross-system, on-the-record appeals from state agency decisions because such appeals are not "civil actions" under the diversity and removal jurisdiction statutes. *See Shamrock*, 120 F.3d at 199. We read the civil action requirement to exclude on-the-record review, but not de novo review, because we thought it clear that the states were forbidden from converting federal district courts into administrative appellate tribunals. *See Chicago, R.I. & P.R. Co. v. Stude*, 346 U.S. 574, 581 (1954). O'Dea has made a colorable argument that *Shamrock*'s holding with respect to *diversity jurisdiction* survives *City of Chicago*, because there the Supreme Court explicitly and repeatedly limited its holding to the *supplemental jurisdiction* scenario presented in that case.[1] In fact, the Court denied that original

---

[1]The Fourth Circuit has adopted a narrow reading of *City of Chicago* like the narrow reading O'Dea urges here. *See Kirkpatrick v. Lenoir County Bd. of Educ.*, 216 F.3d 380, 387 n.6 (4th Cir. 2000) (noting that *City of Chicago* affirmed only "supplemental jurisdiction over state claims that call for deferential on-the-record review of state administrative findings when the district court already possesses original jurisdiction over another claim").

jurisdiction over cross-system appeals was even relevant to supplemental jurisdiction:

> Because this is a federal question case, the relevant inquiry is not, as [respondent] submits, whether its state claims for on-the-record review of the Commission's decisions are "civil actions" within the "original jurisdiction" of a district court: The District Court's original jurisdiction derives from [respondent]'s federal claims, not its state law claims.

*City of Chicago*, 522 U.S. at 166. Thus, the Court declined to answer the question "whether those same [state] claims, if brought alone, would substantiate the district court's 'original' jurisdiction over diversity cases under § 1332." *Id.* at 172. *Shamrock* had answered that exact question with a firm "no," and we cannot lightly ignore it as binding authority. Yet, as today's opinion explains, *Shamrock* primarily depended on a reading of *Stude*, 346 U.S. at 581, and *Horton v. Liberty Mutual Insurance Co.*, 367 U.S. 348, 354-55 (1961), that the Supreme Court disavowed in *City of Chicago*. After *City of Chicago*, we cannot hold that the standard of review dictated by state law in a cross-system appeal determines whether that cross-system appeal is a "civil action" under the diversity jurisdiction statute. *See Miller*, 335 F.3d at 900 ("[I]ssues decided by the higher court need not be identical in order to be controlling.").

This case is a close one, however, because *Shamrock* did not rest exclusively on the distinction between de novo and on-the-record review that *City of Chicago* rejected. Judge Fernandez's *Shamrock* opinion also articulated a compelling policy reason to read the diversity jurisdiction statute to exclude cross-system appeals. "[T]he prospect of a federal court sitting as an appellate court over state administrative proceedings is rather jarring and should not be quickly embraced as a matter of policy." *Shamrock*, 120 F.3d at 200. This sound statement of a principle of federalism is no less true after *City*

*of Chicago*; as explained below, I believe the *City of Chicago* majority, in its response to the dissent, actually reaffirmed the policy argument driving *Shamrock*.

Justice Ginsburg, joined by Justice Stevens, dissented from the Court's opinion in *City of Chicago* in part because of her concern that the Court was precipitously reallocating power from state courts to federal courts, without much indication from Congress that it intended such an expansion of federal power. *See City of Chicago*, 522 U.S. at 177 (Ginsburg, J., dissenting). Absent a clear congressional statement, the dissent thought it unwise for federalism reasons to open district courts to "appeals from the actions of all manner of local (county and municipal) agencies, boards, and commissions." *Id.* at 175 (Ginsburg, J., dissenting). Like *Shamrock*, the *City of Chicago* dissent feared that district courts would be required to encroach on state court prerogative by "directly superintend[ing] local agencies." *Id.* (Ginsburg, J., dissenting). In response, the majority implicitly validated the dissent's protests in two ways, thus reaffirming *Shamrock*'s policy argument. First, the majority reiterated the narrowness of its supplemental jurisdiction holding, distancing itself from "the dissent's repeated assumption that the jurisdictional analysis of diversity cases would be no different." *Id.* at 172 (citations omitted). This suggests that lower courts might properly find that diversity cases are different. There are good reasons that diversity cases *should* be different, the most obvious of which is the expansion of federal court authority foretold by the *City of Chicago* dissent.[2] Second, the majority encouraged district courts to consider the Court's abstention doctrines when presented with a problematic cross-system appeal. The

---

[2]Further, the diversity statute, unlike the supplemental jurisdiction statute, does not afford district courts the discretion to decline jurisdiction over state law claims. *Compare* 28 U.S.C. § 1332 *with* 28 U.S.C. § 1367(c). District courts sitting in diversity therefore lack the option of refusing state law claims out of consideration for "judicial economy, convenience, fairness, and comity." *City of Chicago*, 522 U.S. at 173 (quotation marks omitted).

majority therefore must have agreed that cross-system appeals would at times invite an inappropriate exercise of federal jurisdiction. Otherwise the Court would have had no reason to "note that there may be situations in which a district court should abstain from reviewing local administrative determinations even if the jurisdictional prerequisites are otherwise satisfied." *Id.* at 174. In sum, the majority never suggested the dissent's federalism concerns were misplaced, only that they were significantly mitigated by the majority's narrow holding and the applicability of abstention to future cross-system appeals. Accordingly, were it not for the Court's clarification of *Stude* and *Horton*, we would have good reason to follow the rule of *Shamrock* for diversity cases until the Supreme Court tells us otherwise.

We can only speculate whether today's holding will result in a deluge of cross-system appeals, or whether BNSF is correct that such concerns are overblown. Given these concerns, however, I join my colleagues in urging the district court to decide in the first instance whether any abstention doctrine applies. I am also mindful of the two parallel state court actions these same parties are currently litigating. If these state court proceedings conclude on the merits before the district court decides this case, ordinary principles of res judicata might dictate whether the district court can or should decide this cross-system appeal. Careful consideration of these and perhaps other limitations on federal jurisdiction might help the district court proceed with caution, lest it "jeopardize the 'strong interest' courts of the State have in controlling the actions of local as well as state agencies." *City of Chicago*, 522 U.S. at 185 (Ginsburg, J., dissenting).